[Civ. No. 29034. First Dist., Div. One. May 10, 1972.]

HOSPITAL SERVICE OF CALIFORNIA, Plaintiff and Appellant, v. CITY OF OAKLAND, Defendant and Respondent.

## COUNSEL

Huovinen, White & Giambroni, Joseph T. White, Jr., and Paul C. Cahill for Plaintiff and Appellant.

Edward A. Goggin, City Attorney, and David A. Self, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—Plaintiff Hospital Service of California (Blue Cross) appeals from a judgment denying an injunction against the City of Oakland (City), and declaring Blue Cross to be subject to a "Utility Users Tax" imposed by the City.

Blue Cross is a "nonprofit hospital service corporation" organized under chapter 11A (§§ 11491-11517) of the Insurance Code (all statutory references, unless otherwise indicated, will hereafter be to that code). Section 11493.5 provides: "Every nonprofit hospital service corporation organized or admitted under this chapter is hereby declared to be a charitable and benevolent institution and all of its funds shall be exempt from all and every State, county, district, municipal and school tax other than taxes on real estate and office equipment."

In 1968 the City adopted its Ordinance No. 7860 C.M.S. which imposed a tax upon all *persons* within its boundaries and not exempted therefrom, of 5 percent on all charges made by utility companies for telephone, gas, and electric service used by them.[1] The City assessed the tax

---

[1] Such a utility users tax has been held valid as against the contention that "the Legislature has enacted a uniform statewide system of sales and use taxation and has declared its intent to preempt that field, that such a system is a matter of statewide concern rather than a local municipal affair, and that therefore the Fresno utility users' tax must yield to the Legislature's enactment under principles recently

against Blue Cross, a utility user. By the instant action Blue Cross sought a judgment declaring it to be exempt from, and enjoining the City from collecting the tax. Its sole reliance was placed on section 11493.5.

The first issue posed is one of law—whether or not section 11493.5 is to be construed as exempting Blue Cross from the City's tax.

In our consideration of the statute we are obliged to follow well-established rules. Statutes granting exemption from taxation must be reasonably, but nevertheless strictly, construed against the taxpayer. (*Santa Fe Transp.* v. *State Board of Equal.,* 51 Cal.2d 531, 539 [334 P.2d 907]; *Fellowship of Humanity* v. *County of Alameda,* 153 Cal.App.2d 673, 680 [315 P.2d 394].) The taxpayer has the burden of showing that he clearly comes within the exemption. (*Fredericka Home* v. *County of San Diego,* 35 Cal.2d 789, 792 [221 P.2d 68]; *Cedars of Lebanon Hosp.* v. *County of L.A.,* 35 Cal.2d 729, 734 [221 P.2d 31, 15 A.L.R.2d 1045].) An exemption will not be inferred from doubtful statutory language (*Estate of Simpson,* 43 Cal.2d 594, 597 [275 P.2d 467, 47 A.L.R.2d 991]); the statute must be construed liberally in favor of the taxing authority, and strictly against the claimed exemption (*Estate of Steehler,* 195 Cal. 386, 396 [233 P. 972]). And it is held that "settled principles of statutory construction require that any doubt be resolved against the right to the exemption. . . ." (*Sutter Hospital* v. *City of Sacramento,* 39 Cal.2d 33, 39 [244 P.2d 390]; *San Francisco Boys' Club, Inc.* v. *County of Mendocino,* 254 Cal.App.2d 548, 557 [62 Cal.Rptr. 294].)

The foregoing rules will apply even though the taxpayer may contribute to the public welfare or otherwise serve the interests of the state. In *Cedars of Lebanon Hosp.* v. *County of L.A., supra,* 35 Cal.2d 729, 734, it was said, "In this regard, it is immaterial that the institutions in question may contribute to the public welfare and serve the interests of the state, for they, like other private owners of property, have the burden of showing that they clearly come within the terms of the exemption. . . ."

The City points out that section 11493.5 purports to exempt from taxation only the "funds" of Blue Cross, while its tax is levied not upon such funds, but instead against "every person" who is a gas, electricity, or telephone user. It argues that the exemption statute's obvious purpose is to prevent tax diversion of funds collected, and in effect pledged for the beneficent purpose of alleviating the problems of human illness, while yet allowing real and personal property and other forms of taxation.

reviewed and expounded in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-63 [81 Cal.Rptr. 465, 460 P.2d 137]. . . ." (*Rivera* v. *City of Fresno,* 6 Cal.3d 132, 135 [98 Cal.Rptr. 281, 490 P.2d 793].)

■ If the interpretation of section 11493.5 sought by the City is reasonable it must, under the clear authority we have referred to, be adopted. It is of no moment that the statute may be ambiguous, or that a contrary construction might also be reasonably permissible.

■ We now look to section 11493.5. Condensed to its essence it provides that every nonprofit hospital service corporation's "*funds* shall be exempt from . . . tax[es] other than taxes on real estate and office equipment." (Italics added.) Although perhaps awkwardly expressed, we believe that the only meaning reasonably to be given this language is that *the corporate funds (excluding real estate and office equipment from such funds) shall not be taxed*. This interpretation is consistent with the varied connotations given the word "funds." Although commonly its meaning is "available pecuniary resources ordinarily including cash and negotiable paper that can be converted to cash at any time without loss" (Webster's New Internat. Dict. (3d ed. 1961) p. 921; and see *Keene v. Keene,* 57 Cal.2d 657, 663 [21 Cal.Rptr. 593, 371 P.2d 329]), it has been given far broader definitions such as, "the assets of an estate" (*Estate of Platt,* 21 Cal.2d 343, 348 [131 P.2d 825]) including "real estate" (*Jennings v. Jennings,* 299 Ky. 779 [187 S.W.2d 459, 463]), "capital" (*City of Louisville v. Werne,* 25 Ky.L.Rptr. 2196 [80 S.W. 224, 225]), "assets" (*State v. Davis,* 85 Ohio St. 43 [96 N.E. 1022, 1025]), and "property of every kind" (*State v. Finney,* 141 Kan. 12 [40 P.2d 411, 421]).

Obviously the Legislature had in mind the function of nonprofit hospital service corporations in gathering funds from which to pay their subscribers' future medical costs, and the related public interest in preserving those funds for that purpose. Any tax depletion of such funds would obviously tend to frustrate the beneficial purpose of chapter 11A. It seems reasonable to conclude that the legislative intent of section 11493.5 was to ban any taxation of funds in the usual sense of the word, i.e., cash or resources "that can be converted to cash at any time without loss." But at the same time the Legislature showed a strong intent that hospital service corporations were not to be excused from all taxes, or from taxation generally. This is indicated by the limitation of the statutory exemption to "funds" alone. It is also shown by the provision excluding "real estate and office furniture" (which latter must be the greater part if not all of such a corporation's tangible personal property) from such exempted funds; this prevented any claim of tax exemption on such property under the broader definitions of "funds" pointed out by us.

■ We observe that the statute purports only to exempt hospital service corporations from a *property tax* on their funds. It does not exempt from *excise taxes* (see *Livingston Rock & Gravel Co. v. De Salvo,* 136

Cal.App.2d 156, 160 [288 P.2d 317]; *Estate of Morris,* 37 Cal.App.2d 155, 157 [99 P.2d 294]), such as the City's assessment against persons using public utilities. If the Legislature's intent had been to exempt also in this area of taxation, it seems reasonable to conclude that section 11493.5 would so declare. Certain language of *Estate of Simpson, supra,* 43 Cal.2d 594, 602-603, seems particularly applicable here. Discussing a statutory exemption from taxation the court said: "[T]he most that can be said in favor of the extended application of the exemption clause here sought is that the statute may provoke some doubt as to its intended scope. Settled principles of statutory construction require that any doubt be resolved against the right to the exemption. [Citation.] Under the circumstances, this court would not be justified in holding the exemption from taxation clause to apply beyond the limits of property taxation, and if further extension is deemed appropriate so as to include excise or privilege taxes, such as the state inheritance tax, the act should be so clarified by the Legislature in unmistakably clear language."

Pertinent to our consideration is the concession of Blue Cross that throughout its corporate life it has paid, without protest, "use taxes" (see Rev. & Tax. Code, §§ 6201-6207) assessed against it;[2] also that the State Board of Equalization regularly assesses such use taxes against nonprofit hospital service corporations. The use tax is an "excise tax" imposed on the use or other consumption of tangible personal property. (Rev. & Tax. Code, § 6201.) It is obviously closely akin to the City's Utility Users Tax, and it would seem that if the exemption of section 11493.5 applied to one it would also apply to the other.

■ In the context of a statutory interpretation by the State Board of Equalization it was said: "Although not necessarily controlling, as where made without the authority of or repugant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Coca-Cola Co.* v. *State Bd. of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1].)

■ Also of some significance is a "Proposed Model Law" which was prepared and disseminated January 1939, prior to the adoption of section 11493.5, by the Commission on Hospital Service Plans of the American Hospital Association. The proposal recommended a statutory provision reading, "*Taxation*: Every corporation subject to the provisions of this

---

[2]Blue Cross has also been subject to sales taxes, but points out that such taxes were collected by the retailer and passed on to it, the consumer.

act is hereby declared to be a charitable and benevolent institution, and *its funds, operations and properties shall be exempt from taxation.*"[3] (Italics added.) It seems most unlikely that this recommendation to the several state Legislatures was not in the hands of, and considered by, California's Legislature when it adopted section 11493.5 later in the year 1939. Yet the Legislature rejected the suggestion that "operations and properties" of nonprofit hospital service corporations be exempted from taxation.

As previously noted, the statute reads: "Every nonprofit hospital service corporation organized or admitted under this chapter is hereby declared to be a charitable and benevolent institution and all of its funds shall be exempt from all and every State, county, district, municipal and school tax other than taxes on real estate and office equipment." We are unpersuaded by Blue Cross' argument that it should be read "with a double subject," so as to reach the following result: "Every non-profit hospital service *corporation* . . . and *all of its funds shall be exempt* from all . . . tax other than on real estate and office equipment." (Italics supplied by Blue Cross.)

We are impelled to, and do, conclude that section 11493.5 is reasonably subject to the interpretation contended for by the City. The judgment for that reason must be affirmed.

It becomes unnecessary in our resolution of the appeal to consider the City's contention and the trial court's finding that section 11493.5 is, by virtue of California's Constitution article XI, section 5, inapplicable to the City of Oakland, a "home rule" chartered city.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied June 7, 1972, and appellant's petition for a hearing by the Supreme Court was denied July 5, 1972.

[3] 6 Law and Contemporary Problems (1939) pages 542-543.