[Civ. No. 33610. First Dist., Div. One. June 12, 1974.]

STANDARD OIL COMPANY OF CALIFORNIA,
Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

## Counsel

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Timothy G. Laddish, Deputy Attorney General, for Defendant and Appellant.

Pillsbury, Madison & Sutro, Noble K. Gregory, Frank H. Roberts, Donald G. McNeil and Michael H. Salinsky for Plaintiff and Respondent.

## Opinion

**ELKINGTON, J.**—California's Revenue and Taxation Code section 6353 provides certain exemptions from taxes imposed by the state's "Sales and Use Tax Law" (Rev. & Tax. Code, §§ 6001-7176, inclusive). Section 6353, during the period with which we are concerned, read: "There are exempted from the taxes imposed by this part the gross receipts from the sales, furnishing, or service of and the storage, use, or other consumption in this State of gas, electricity, and water when delivered to consumers through mains, lines, or pipes."

Respondent Standard Oil Company, hereafter "Standard," had "used" certain liquefied petroleum gas, a substance which will here be described as "LPG." A "use tax" was assessed by the appellant State Board of Equalization (hereafter sometimes the "Board") which Standard paid under protest, and then commenced this action in the superior court for its recovery.

In the superior court the parties stipulated, among other things, to the following facts: "The LPG which is the subject of this action was transported by the vendor's tank delivery trucks to Standard's storage facilities located near an injection well. Delivery is accomplished by attaching the vendor's filling tube and vapor return tube to Standard's unloading container. The filling tube through which the liquid product flows is a flexible high pressure rubber or neoprene tube or hose (which plaintiff contends is a 'line' or 'pipe' within the meaning of Revenue and Taxation Code section 6353 and defendant contends is not) 15' to 20' long and some 2 to 2½" in diameter. After the two tubes are connected to the storage container, the outlet valves at the container end are closed and the valves on both liquid and vapor tubes on the truck are opened. The truck engine is then started, supplying the power for the pumping action. The filling is begun by slowly opening the valves at the outlet end of the tubes. The

product remains under pressure and in a liquefied condition during the complete operation. The delivery truck and the tubes are the property of the vendor."

Standard's contention was that section 6353 exempted it from the use tax because (1) the LPG was delivered "through mains, lines, and pipes," and (2) although delivered to Standard in a liquid state, it was nevertheless a "gas."

The trial court agreed with both of Standard's contentions and judgment was entered accordingly. The Board has appealed from the judgment.

Since there was no factual conflict in the superior court we are confronted only with issues of law.

■ We first consider the issue whether the LPG in question was "delivered [to Standard] through mains, lines, or pipes," within the meaning of section 6353.

■ A prime rule of statutory construction is that words "should be given their ordinary meaning unless otherwise clearly intended or indicated. . . ." (*Estate of Richartz*, 45 Cal.2d 292, 294 [288 P.2d 857]; *City of El Monte* v. *City of Industry*, 188 Cal.App.2d 774, 780 [10 Cal. Rptr. 802].) ■ Nothing in the statute before us indicates that the critical words are used in a sense other than their ordinary meaning.

In the ordinary meaning of the word, the LPG here must be deemed to have been "delivered" to Standard from the vendor's storage tanks by means of *tank trucks* to the locations pointed out by Standard on its property. The use of a flexible hose for the last few feet of the substance's travel seems but an incident to that delivery.

We consider now the ordinary meaning of the words "mains," "lines," and "pipes." Webster's New International Dictionary (3d ed.) defines them as follows: "*Main:* . . . [A] pipe, duct or circuit to or from which lead tributary branches of a utility system and which carries their combined flow . . . ."

"Line: . . . [P]iping for [carrying] a fluid (as steam, gas, water, oil) [such as] blew out the main line; installed a new [sewer] line; broadly: hose, pipe . . . ."

"Pipe: . . . [A] long hollow cylinder (as of metal, clay, concrete, plastic) used for conducting a fluid, gas, or finely divided solid and for structural purposes; *typically:* metal tubing in standard diameters and lengths threaded at the end for joining . . . ."

And we note that the same lexicon defines "Hose" as a ". . . flexible tube (as of rubber, plastic or fabric) for conveying fluids (as air, steam, powdered coal, or water from a faucet or hydrant) . . . ."

These several commonly accepted definitions would indicate that "mains," or "lines" (in the usual sense), or "pipes" are not *ordinarily* considered as embracing the concept of "hoses" through which the contents of a tank truck are emptied. Certainly it must be said that section 6353 is at least *uncertain* as to the legislative intent to include "hoses" in the three types of conduits mentioned in the statute.

We observe that the appellant Board has long construed section 6353 as not including within its exemption from taxation, sales or use of substances emptied from vendor's vehicles by means of hoses. ■ Referring to a statutory interpretation by that agency of the state, *Coca-Cola Co.* v. *State Bd. of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1], tells us: "Although not necessarily controlling, as where made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. . . ." We are unable to conclude that the construction given section 6353 by the Board is "clearly erroneous or unauthorized."

We note further that section 6353 is a statute allowing *exemption* from sales and use taxes under certain conditions. ■ In *Hospital Service of California* v. *City of Oakland,* 25 Cal.App.3d 402, 405 [101 Cal.Rptr. 800], we collected the related authority in this manner: "Statutes granting exemption from taxation must be reasonably, but nevertheless strictly, construed against the taxpayer. (*Santa Fe Transp.* v. *State Board of Equal.,* 51 Cal.2d 531, 539 [334 P.2d 907]; *Fellowship of Humanity* v. *County of Alameda,* 153 Cal.App.2d 673, 680 [315 P.2d 394].) The taxpayer has the burden of showing that he clearly comes within the exemption. (*Fredericka Home* v. *County of San Diego,* 35 Cal.2d 789, 792 [221 P.2d 68]; *Cedars of Lebanon Hosp.* v. *County of L. A.,* 35 Cal.2d 729, 734 [221 P.2d 31, 15 A.L.R.2d 1045].) An exemption will not be inferred from doubtful statutory language (*Estate of Simpson,* 43 Cal.2d 594, 597 [275 P.2d 467, 47 A.L.R.2d 991]); the statute must be construed liberally in favor of the taxing authority, and strictly against the claimed exemption (*Estate of Steehler,* 195 Cal. 386, 396 [233 P. 972]). And it is held that 'settled principles of statutory construction require that any doubt be resolved against the right to the exemption.' . . .' (*Sutter Hospital* v. *City of Sacramento,* 39 Cal.2d 33, 39 [244 P.2d 390]; *San Francisco Boys'*

*Club, Inc.* v. *County of Mendocino,* 254 Cal.App.2d 548, 557 [62 Cal. Rptr. 294].)" Although, as we have suggested, we do not find the subject statutory language to be "doubtful," even assuming arguendo such doubt, under this authority the point in question must be resolved against Standard.

For yet another reason the Board's construction of section 6353 should be upheld. In 1972, after the dispute before us arose, the section was amended by adding the language which we emphasize, as follows: "There are exempted from the taxes imposed by this part the gross receipts from the sales, furnishing, or service of and the storage, use, or other consumption in this State of gas, electricity, and water when delivered to consumers through mains, lines, or pipes, *and water when sold to an individual in bulk quantities of 50 gallons or more for general household use in his residence if the residence is located in an area not serviced by mains, lines or pipes.*" The added language indicates a legislative construction of the preexisting statutory words "mains, lines, or pipes" as meaning such fixed, "mains, lines, or pipes" as ordinarily service a geographical area with utility service. ▪ While of course legislative interpretation of a previous Legislature's statutory language is not necessarily binding on us (see *Oakland* v. *Oakland Water Front Co.,* 118 Cal. 160, 170-173 [50 P. 277]), it is entitled to judicial respect.

We are unpersuaded that a 1943 opinion of the Attorney General (1 Ops.Cal.Atty.Gen. 226) lends aid to Standard's contentions. That opinion concerned gas tank installations which were placed by a public utility on the premises of gas consumers. The tanks and their contents were owned by the public utility. The installations were connected with pipes leading to the premises of customers where the gas was consumed. As many as 24 customers were connected with an installation. A meter on each customer's pipe registered the amount of gas consumed. The Attorney General advised the State Board of Equalization as follows: "Where a meter is installed by the [public utility] in the consumer's pipe line, the meter registers the amount of gas consumed and payment would ordinarily be made on that basis, the [public utility] retaining title to the unconsumed gas in the tank and to the meter. In this situation the [public utility] would be delivering gas through a pipe line which [it] did not own, but by means of the meter he would regulate the flow and only the gas passing through the meter would be sold and be subject to charge. I am inclined to the view that this type of sale would be exempt under section 5(b) [an earlier statute analogous to section 6353]." It was the Attorney General's further view that the statute did not "qualify the exemption according to the length or size of the delivery-medium."

It will be seen that the Attorney General's advice was predicated upon a continuous "delivery" through "pipes" from the tank storage facilities of the public utility through a meter and into the pipe and gas consumption devices of the customer. It is wholly inapposite to the issues of this appeal.

For these several reasons we held that Standard's "use" of LPG, following its delivery under the stipulated circumstances of the instant appeal, was not exempted from taxation by the provisions of section 6353.

It becomes unnecessary to a disposition of the appeal to determine whether the subject LPG, a liquid throughout its delivery to Standard by tank truck and hose, was a "gas" within the meaning of section 6353.

The judgment is reversed; the superior court will enter judgment in favor of appellant State Board of Equalization.

Sims, Acting P. J., and Devine, J.,* concurred.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.