[No. D010523. Fourth Dist., Div. One. Dec. 19, 1990.]

STEWART KERN et al., Plaintiffs and Appellants, v.
COUNTY OF IMPERIAL et al., Defendants and Respondents.

**[Opinion certified for partial publication.[1]]**

[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Ajalat & Polley, Terry L. Polley, Richard J. Ayoob and Charles R. Ajalet for Plaintiffs and Appellants.

Thomas M. Fries, County Counsel, and Kevin E. Ready, Sr., Deputy County Counsel, for Defendants and Respondents.

## OPINION

**TODD, J.**—Stewart Kern and 14 other persons, including 2 acting individually and as personal representatives of estates, appeal a judgment in favor of Imperial County in their complaint for refund of property taxes paid on real property transferred from a corporation to them as individual shareholders. At issue is whether the transfer of the real property was a change of ownership that would invoke a reassessment of the real property under Proposition 13[2] and the statutory and regulatory provisions that implement it.

### FACTS

In 1947, Kern, Paul Juel, and Adolph Magagna formed a partnership to feed lambs in the Imperial Valley. In 1963, the partnership was incorporated as Sweetwater Feeders, Inc., (Sweetwater). Magagna died in 1965; Juel died in 1970. On August 22, 1977, Kern and the other shareholders of Sweetwater, all of whom were related to one of the original partners, entered into an "Agreement to Dissolve and Liquidate a Corporation," which provided that upon the death or retirement of Kern, the assets of the corporation would be distributed according to the terms of the agreement. The agreement set forth specific parcels of Sweetwater's real property that were to be distributed to three groups of shareholders: the Kern Group; the Juel Group; and the Magagna Group.

In 1982, Stewart Kern retired. On August 3, 1982, Attorney Mercedes Wheeler, wrote to the Imperial County Assessor and inquired whether transferring title of Sweetwater's real property to the shareholders would result in a reassessment of the transferred property. On August 10, 1982, the county's chief appraiser responded that such a transfer would result in a reappraisal because the transfer would be a change of ownership of the property under title 18, California Code of Regulations, section 462, subdivision (j)(2)(B)(iv). On October 1, 1982, the real property of Sweetwater was distributed pursuant to the terms of the 1977 agreement. The transfer consisted of the deeding of fifteen different parcels to the shareholders, with the Kern Group receiving title to five parcels, the Juel Group receiving title to six parcels and the Magagna Group receiving title to four parcels. The

---

[2] Proposition 13, the Jarvis-Gann Amendment, was added to the California Constitution as article XIII A, by vote of the People on June 6, 1978. Section 1 of article XIII A provides in relevant part: "(a) The maximum amount of any ad volorem tax on real property shall not exceed one percent (1%) of the full cash value of such property." Section 2 of article XIII A provides in relevant part: "(a) The full cash value means the county's assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, or *a change in ownership has occurred after the 1975 assessment*." (Italics added.)

shareholders paid the property taxes on the parcels for the years 1983-1984 and 1984-1985 per the reassessed value of the parcels and later filed claims for tax refunds. The Imperial County Board of Supervisors, sitting as a board of equalization, denied the claims in January 1986. The shareholders filed this complaint in March 1986.

The parties' stipulation of facts for trial included the following statements: (1) "As a result of the distribution of the assets of Sweetwater, the shareholders' proportional interest in the real estate remained the same after the transfer"; and (2) "Each shareholder took an exact pro rata share of the assets available for distribution."

In ruling in favor of the county, the trial court found (1) the date of transfer of Sweetwater's real property was 1982 and (2) under the controlling statute, Revenue and Taxation Code[3] section 62, the transfer constituted a change of ownership that triggered a reassessment under Proposition 13.

### DISCUSSION

### I

■ The main issue presented by this case is whether the transfer of the Sweetwater real property to the shareholders pursuant to the liquidation agreement was a change of ownership in the context of Proposition 13. As indicated in footnote 2, *ante*, Proposition 13 provided that "a change in ownership" is one of three events that triggers a reassessment. (Cal. Const., art. XIII A, § 2.) Proposition 13, however, did not define "change of ownership."[4]

Pertinent to this case are sections 60 and 62. Section 60 sets out a basic definition of "change of ownership." It provides: "A 'change in ownership' means a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." Section 62 provides for specific exclusions from the definition of "change of ownership."

---

[3] All statutory references are to the Revenue and Taxation Code unless otherwise specified.

[4] In the implementation of the property tax limitations contained in article XIII A of the California Constitution, the Legislature, in 1978, established statutory definitions of "change of ownership," as contained in section 110.6. (See Stats. 1978, ch. 292, § 29; and Stats. 1978, ch. 332, § 26, p. 701.) Section 110.6 was repealed by the force of its own terms on July 1, 1979, and the Legislature subsequently enacted new statutory provisions, effective July 10, 1979, defining a "change of ownership" for property tax limitation purposes. (See Stats. 1979, ch. 242, § 4, p. 506.) These provisions are contained in sections 60 through 67.

Kern and the other shareholders (hereafter Kern) contend the trial court misconstrued section 62, as it existed in 1982. We disagree.

In 1982, section 62 provided, in pertinent part:

"Change in ownership shall not include:

"(a) Any transfer between coowners which results in a change in the method of holding title to the real property without changing the proportional interests of the coowners, such as a partition of a tenancy in common, or any transfer of title between an individual and a legal entity or between legal entities, such as a cotenancy to a partnership, a partnership to a corporation, a trust to a cotenancy, or an individual to a legal entity, which results solely in a change in the method of holding title and in which the proportional interests of the transferors and transferees, whether represented by stock, partnership interest, or otherwise, remain the same after transfer."

Essentially, section 62, subdivision (a), in effect in 1982, exempted from the definition of "change of ownership" a real property transaction "which results solely in a change in the method of holding title and in which the proportional interests of the transferors and transferees . . . remain the same after transfer." Here, we are dealing with a situation in which prior to the execution of the agreement 16 persons (and the estate of another) had corporate equity interests in each of 15 parcels of land. After the transfer, groups of six, four, and eight persons owned fee interests in various different parcels. No two groups received an interest in the same taxable parcel. They agreed among themselves—and, indeed, no one disputes this—that this division of land was proportional to their corporate interests. However, it is clear that with respect to the title of the real property, the proportional interest of each shareholder in each of the 15 parcels of land changed with the October 1982 transfer. Thus, the October 1982 transfer was not covered by then-section 62 and was not exempted from the definition of "change of ownership."

Our interpretation is bolstered by the then-existing administrative regulation. Government Code section 15606 provides the State Board of Equalization with the duty of prescribing rules and regulations to govern assessment practices throughout the state. The Board of Equalization has adopted rules and regulations collected in title 18, California Code of Regulations, section 1 et seq. At the time of the October 1982 transfer, the issue of change of ownership was addressed in title 18, California Code of Regulations, section 462, which provided in pertinent part:

"(a) General.

"(1) There shall be a reappraisal of real property as of the date of a change in ownership of that property. The reappraisal will establish a new base year full value and will be enrolled on the lien date following the change in ownership.

"(2) A 'change in ownership' in real property occurs when there is a transfer of a present interest in the property, and a transfer of the right to beneficial use thereof, the value of which is substantially equal to the value of the fee interest. Every transfer of property qualified as a 'change in ownership' shall be so regarded whether the transfer is voluntary, involuntary, by operation of law, by grant, gift, devise, inheritance, trust, contract of sale, addition or deletion of an owner, property settlement (except as provided in (1) (3) for interposal transfers), or any other means. A change in the name of an owner of property not in the right to beneficial use is excluded from the term 'transfer' as used in this section.

". . . . . . . . . . . . . . . . . . .

"(j) Legal Entities.

"(1) Transfers of property to and by legal entities. Except as is otherwise provided in subdivision (2), the transfer of any interest in real property to a corporation, partnership, or other legal entity is a change in ownership of such real property transferred.

"(2) Exclusions:

". . . . . . . . . . . . . . . . . .

"(B) Transfers of real property between separate and legal entities or by an individual(s) to a legal entity (or vice versa), which result solely in a change in the method of holding title and in which the proportional ownership interests in the property remain the same after the transfer. (The holders of the ownership interests in the transferee legal entity, whether such interests are represented by stock, partnership shares, or other types of ownership interest, shall be defined as 'original co-owners' for purposes of determining whether a change in ownership has occurred upon the subsequent transfer(s) of the ownership interests in the legal entity.)

"EXAMPLES:

". . . . . . . . . . . . . . . . .

"(iv) Corporation X owns Blackacre and Whiteacre (both are of equal value). A & B each own 50 % of Corporation X's shares. X transfers Whiteacre to A and Blackacre to B. Change in ownership of 100% of both Blackacre and Whiteacre."

The transfer of Sweetwater's real property to its shareholders falls squarely within the provisions of the regulation. Moreover, the example provided by California Code of Regulations, title 18, section 462, subdivision (j)(2)(B)(iv), is directly on point.

■ Interpretations put forth by administrative agencies charged with enforcement, implementation and interpretation of enactments are entitled to great weight. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; *State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 777 [256 P.2d 305] [144 Cal.Rptr. 758, 576 P.2d 473].) " '[C]ourts generally will not depart from such construction unless it is clearly erroneous or unauthorized.' " (*City of Los Angeles* v. *Rancho Homes, Inc.* (1953) 40 Cal.2d 764, 770-771.) In *South Dakota, supra,* 20 Cal.3d at page 777, our Supreme Court characterized administrative construction of an enactment as a "factor of considerable force." Thus, our interpretation of section 62, in effect in 1982, is significantly supported by the administrative regulation on the books at the relevant time of the transfer here.[5]

## II

■ To support the assignment of error, Kern asks this court to consider the statute as it was amended by the Legislature in 1982. (Stats. 1982, ch. 1465, § 4.5, p. 5633.) Effective January 1, 1983, section 62 read, in pertinent part:

"Change in ownership shall not include:

"(a)(1) Any transfer between coowners which results in a change in the method of holding title to the real property transferred without changing the proportional interests of the coowners in that real property, such as a partition of a tenancy in common.

"(2) Any transfer between an individual or individuals and a legal entity or between legal entities, such as a cotenancy to a partnership, a partnership

---

[5] We are not persuaded by Kern's purely speculative argument that because the regulation had been promulgated only months before the transfer here (the regulation went into effect June 10, 1982) that it did not reflect existing law but was designed to conform to an anticipated amendment to section 62. The operative fact we need to concern ourselves with is that on October 1, 1982, the administrative regulation was in effect.

to a corporation, or a trust to a cotenancy, which results solely in a change in the method of holding title to the real property and in which proportional ownership interests of the transferors and transferees, whether represented by stock, partnership interest, or otherwise, in each and every piece of real property transferred, remain the same after the transfer . . . ." The linchpin of Kern's argument is twofold: (1) The transfer here was not covered by the exclusionary language of the 1982 amendment of section 62;[6] and (2) the 1982 amendment was a change in the law that should not be given retrospective effect. Thus, Kern argues, section 62, subdivision (a), in effect on October 1, 1982, excluded the transfer from being a change in ownership. In other words, Kern is arguing the Legislature changed the law effective January 1, 1983, so that the type of transfer involved here does not fall within the exemption provisions of section 62, and, therefore, this type of transfer must have fallen within the exemption provisions of the statute before it was amended.

To support the premise that the 1982 legislation was a change in the law, Kern (1) points to the change in language of the statute, (2) the absence of any language in the legislation that the amendment was intended to be declaratory of existing law, and (3) the absence of a provision on retroactivity.[7]

Kern argues the insertion of the phrase "in that real property" in subdivision (a)(1) limited partition to a property that had not yet been subdivided, and the use of the phrase "in each and every piece of real property transferred" in subdivision (a)(2) added the requirement that the transferees take an undivided interest in each property.

We disagree for we conclude the changes in the language, and, more particularly, the addition of new language, in the 1982 legislation was a clarification of the existing law, particularly the notion of "proportional interests" used in the earlier version. Also, the changes in the language were in keeping with the administrative regulation promulgated by the State Board of Equalization, as discussed above. ▮ In *Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 471 [183 P.2d 10], our Supreme Court noted the rule that "administrative interpretation of a prior provision in a revenue law and

---

[6] Clearly, this is correct since the ownership interests of the shareholders after the transfer "in each and every piece of real property transferred" did not "remain the same after the transfer." (§ 62, subd. (a)(2).)

[7] With respect to this third point, Kern argues that we should consider the following: (1) Assembly Bill No. 3194, the bill that originally included the amendments to section 62, included a section that explicitly gave the bill retrospective effect, but that section of the bill was deleted when the provisions of Assembly Bill No. 3194 were amended into Assembly Bill No. 3382; and (2) in other legislation implementing Proposition 13, the Legislature had established a course of conduct of inserting a section on retrospective effect.

subsequent legislative definition in accord therewith [is] acceptable evidence of legislative intent."

We also reject Kern's interpretation of the 1982 legislation based on established principles of statutory construction.

■   The cardinal rule of statutory construction is the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732 [114 Cal.Rptr. 460, 523 P.2d 260].) The canon of statutory construction that statutes are not to be given retrospective operation unless it is clearly made to appear that such was the legislative intent is subordinate to the rule that a statute must be interpreted so as to effectuate legislative intent. (*Mannheim* v. *Superior Court* (1971) 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17].) ■   We are, of course, mindful of the principle that a substantial change in the language of a statute by an amendment generally indicates an intention to change its meaning. (*Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 493 [159 Cal.Rptr. 494, 601 P.2d 1030].) However, the presumption that legislative action was intended to change the law has no bearing upon legislative actions that are readily explained by other purposes. (*Becker* v. *Lindsay* (1976) 16 Cal.3d 188, 192 [127 Cal.Rptr. 348, 545 P.2d 260].) Furthermore, while an intention to change the law is usually inferred from a material change in the language of the statute, a consideration of the surrounding circumstances may indicate merely a legislative intent to clarify the law. (*Nationwide Investment Corp.* v. *California Funeral Service, Inc.* (1974) 40 Cal.App.3d 494, 501 [114 Cal.Rptr. 77].)

Here, we look at the legislative history of Assembly Bill No. 3382, 1981-1982 Regular Session, the measure by which section 62 was amended in 1982. ■   The legislative history of a statute and the wider historical circumstances of its enactment are legitimate and valuable aids in divining statutory purpose. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) The State Board of Equalization sponsored Assembly Bill No. 3382 and in its legislative bill analysis,[8] the board referred to it as a " 'housekeeping bill' " aimed toward "correct[ing] a number of technical and minor substantive inconsistencies, errors, and problems in the law relative to property taxation." When the amendments to section 62 were added to the bill, the board's analysis was supplemented to note, in pertinent part, the following:

---

[8] On our own motion, and over the objection of Kern, we take judicial notice of the legislative committee reports dealing with Assembly Bill No. 3382. (Evid. Code, §§ 459, 452, subd. (c).) "That a court may consider legislative records and statements of concerned agencies in relation to legislative proposals in determining the intent of the Legislature is clear. [Citations.]" (*Adamson Companies* v. *Zipp* (1984) 163 Cal.App.3d Supp. 1, 14, fn. 17 [210 Cal.Rptr. 165].)

"*Sections 4 and 5* of the bill would amend Sections 62 and 64 of the Revenue and Taxation Code to clarify provisions relating to changes in ownership of real property by legal entities which, under current law, are ambiguous when applied to a specific factual situation, and would also make various technical changes to these sections:

"a. Section 62 (a) would be amended to clarify that transfers between co-owners in cases of partitions and changing methods of holding title as co-tenants are distinct from transfers to, from, and between legal entities. The proposal would also make technical changes to Section 62 (a)(2) for the purpose of clarifying that the 'proportional interests' must remain the *same* in each and every piece of real property transferred.

"*Example*: Corporation A owns Blackacre and Whiteacre, each of equal value. X and Y are each 50% of shareholders. Upon dissolution of Corporation A, X and Y receive a 1/2 undivided interest in both Blackacre and Whiteacre. This transfer is excluded under proposed Section 62 (a)(2), whereas a transfer of Blackacre to X and Whiteacre to Y upon dissolution of Corporation A would not be, since the proportional ownership interests in each property is not the same before and after the transfer." (Italics in original.)

Thus, it is clear the intent of the sponsor of the bill was to *clarify* existing law and remove any ambiguity to specific fact situations, one of which was the type of transfer which is the subject of this lawsuit.  ▮  The statements of the sponsor of legislation are entitled to be considered in determining the import of the legislation. (*De Malherbe* v. *International Union of Elevators Constructors* (1977 N.D.Cal.) 438 F.Supp. 1121, 1139, fn. 22, relying on *Schwegmann Bros.* v. *Calvert Corp.* (1951) 341 U.S. 384, 394-395 [95 L.Ed. 1035, 1047-1048, 71 S.Ct. 745, 19 A.L.R.2d 1119]; and *Woodwork Manufacturers* v. *NLRB.* (1967) 386 U.S. 612, 640 [18 L.Ed.2d 357, 375-376, 87 S.Ct. 1250].) We note that our review of the legislative history discloses nothing that indicates the board's analysis, which was made available to the the Legislature and the legislative committees that passed judgment on it, was ever disputed at any point in the legislative process. It is reasonable to infer from the absence of any challenge to the board's statements that the Legislature "accepted these authoritative representations as to the proper construction of the bill." (*United States* v. *Mine Workers* (1947) 330 U.S. 258, 279-280 [91 L.Ed. 884, 905, 67 S.Ct. 677].)

▮  Thus, we conclude it was the intent of the Legislature in enacting Assembly Bill No. 3382 to clarify section 62 or, in other words, provide a legislative construction of the preexisting statute. (*Standard Oil Co.* v. *State Bd. of Equalization* (1974) 39 Cal.App.3d 765, 770 [114 Cal.Rptr. 571].) Therefore, given this strong evidence of statutory intent to clarify the law,

the absence in the legislation itself of any explicit statement that it was intended to be declaratory of existing law is not binding on us. (See *Verreos v. City and County of San Francisco* (1976) 63 Cal.App.3d 86, 99 [133 Cal.Rptr. 649].)

Finally, Kern urges us to consider the absence of a retroactive provision in light of the established rule a statute effecting a substantive change will not be retrospectively applied unless legislative intent to the contrary is clear. (See *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865].) However, this canon of construction really has no application here because, as demonstrated above, the legislation did not effect a substantive change but rather clarified the law. (See *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828-829, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629].)

III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

Affirmed.

Kremer, P. J., and Froehlich J., concurred.

---

*See footnote 1, *ante*, page 391.