[No. B138063. Second Dist., Div. Seven. Sept. 11, 2000.]

ALPHA THERAPEUTIC CORPORATION, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

## COUNSEL

O'Melveny & Myers, Frederick A. Richman, Carla Christofferson and Aleks S. Frimershtein for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Richard W. Bakke and Thomas G. Heller, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**LILLIE, P. J.**—Alpha Therapeutic Corporation (Alpha) appeals from summary judgment granted in favor of defendant Franchise Tax Board of the State of California (FTB) on Alpha's complaint for a refund of over $950,000 in franchise taxes paid for four consecutive fiscal years ending September 30, 1993. The dispositive issue, and one apparently of first impression,[1] is whether Revenue and Taxation Code section 33 (section 33) affords Alpha an exemption from franchise taxes. Section 33 provides:

---

[1] The only other published case of which we are aware which construes section 33 is *Alpha Therapeutic Corp. v. County of Los Angeles* (1986) 179 Cal.App.3d 265 [224 Cal.Rptr. 498], from Division One of our Second District. The issue there was whether Revenue and Taxation Code section 33 exempted *from property taxation* the personal property used by Alpha to collect, store and manufacture human blood plasma and pharmaceutical products manufactured for medical purposes, and the court held that section 33 did not afford such an exemption. In arguing that section 33 afforded an exemption, Alpha made the broader argument that section 33 advantages businesses involved in collecting, storing, and producing blood products; the court rejected such argument and used reasoning that supports FTB's position herein. However, the court never expressly addressed the issue of franchise taxes,

"Human whole blood, plasma, blood products, and blood derivatives, or any human body parts held in a bank for medical purposes, shall be exempt from taxation for any purpose."

FACTUAL AND PROCEDURAL BACKGROUND

The parties stipulated to the following undisputed facts: Alpha is a California for-profit corporation with headquarters in Los Angeles; Alpha is owned by Yoshitomi Pharmaceutical Industries, Ltd., Japan's tenth largest pharmaceutical company. Since 1978, Alpha has been in the business of processing, distributing, and selling human plasma, blood products, and blood derivatives (the blood business). Alpha is one of the world's top five plasma component manufacturers; over a four-year fiscal period ending September 1993, Alpha had a net business income of almost $12 million; all or substantially all of its net income is from its blood business and it has no nonbusiness income.

With respect to four fiscal years ending September 1990 through 1993, Alpha paid almost $1 million in franchise taxes. In 1996, Alpha filed four timely administrative claims for refund with the FTB; Alpha did not contest that it owed the minimum franchise tax for those years ($2,400 for 1990, and $3,200 for 1991 to 1993); however, Alpha claimed an exemption from the franchise tax based on section 33 because the franchise tax paid was measured by the net income from the sale of blood derivatives. In December 1996, FTB denied Alpha's claims for refund. Alpha filed an appeal with the State Board of Equalization (SBE), which was denied; SBE also denied Alpha's request for reconsideration. Alpha then filed the instant suit for a refund; FTB filed an answer. The parties then each filed a motion for summary judgment. Although the parties disagreed as to whether section 33 afforded Alpha an exemption from franchise taxes measured by its net income, the parties agreed on the amount of the refund if the court were to determine that section 33 afforded a franchise tax exemption to Alpha, or the

and the issue raised herein was not resolved in 1986. We thus characterize the issue herein as one of first impression.

We also note that in 1997, the Legislature added section 6364.5 to that part of the Revenue and Taxation Code containing exemptions to sales and use taxes. Subdivision (a) of section 6364.5 provides an exemption to the sales and use taxes for "the gross receipts from the sale in this state of, and the storage, use, or other consumption in this state of, any container used to collect or store human whole blood, plasma, blood products, or blood derivatives that are exempt from taxation pursuant to Section 33, including, but not limited to, blood collection units and blood pack units." We are not presented in this appeal with the issue of whether section 33 or section 6364.5 exempts from the *sales and use taxes* the gross receipts from the sale of human whole blood, plasma, blood products, or blood derivatives; nothing in this opinion is intended to express any conclusion on the issue of sales and use taxes.

amount of tax imposed if the court determined section 33 did not afford a franchise tax exemption to Alpha. After hearing on the motions, the court determined that FTB was entitled to judgment as a matter of law; the court reasoned that the franchise tax is a tax for the privilege of exercising the corporate franchise within California; although it is measured by corporate net income, the tax is not a tax on products, or on the blood products set out in section 33.

Alpha filed timely notice of appeal from the judgment. Alpha's principal arguments on appeal are (1) the language of section 33, its placement in the portion of the Revenue and Taxation Code containing "general provisions," and its legislative history, demonstrate that the section was intended to apply for purposes of the franchise tax; and (2) the long-standing treatment of sales tax, as set out in SBE's Business Taxes Law Guide, Sales and Land Use Tax Annotations (1971) Annotation No. 495.0045, indicates that section 33 affords an exemption applicable also to franchise taxes.

## DISCUSSION

"A trial court's grant of a motion for summary judgment is reviewed de novo by the appellate court. [Citations.] In addition, the trial court's determination in this case turned on its interpretation of state law. 'Issues of statutory construction present questions of law, calling for an independent review by the appellate court. [Citations.]' " (*Campbell v. Arco Marine, Inc.* (1996) 42 Cal.App.4th 1850, 1855 [50 Cal.Rptr.2d 626].)

In our consideration of section 33, "we are obliged to follow well-established rules. Statutes granting exemption from taxation must be reasonably, but nevertheless strictly, construed against the taxpayer. [Citations.] The taxpayer has the burden of showing that he clearly comes within the exemption. [Citations.] An exemption will not be inferred from doubtful statutory language [citation]; the statute must be construed liberally in favor of the taxing authority, and strictly against the claimed exemption [citation]." (*Hospital Service of California v. City of Oakland* (1972) 25 Cal.App.3d 402, 405 [101 Cal.Rptr. 800].) Any doubt must be resolved against the right to the exemption. (*Ibid.*) Moreover, where the statute contains an express enumeration of exemptions, additional exemptions should not be presumed. (*Associated Beverage Co. v. Board of Equalization* (1990) 224 Cal.App.3d 192, 210 [273 Cal.Rptr. 639].) The foregoing rules will apply even though the taxpayer may contribute to the public welfare or otherwise serve the interests of the state. (*Hospital Service of California v. City of Oakland, supra,* 25 Cal.App.3d at p. 405.)

"The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Accordingly, if the interpretation of section 33 sought by FTB and adopted by the trial court is reasonable, "it must, under the clear authority we have referred to, be adopted. It is of no moment that the statute may be ambiguous, or that a contrary construction might also be reasonably permissible." (*Hospital Service of California v. City of Oakland, supra*, 25 Cal.App.3d at p. 406.)

■ Alpha has failed to meet its burden of showing that section 33 affords an exemption from franchise taxes, either by its express language or by implication. The express language of section 33 has no application to franchise taxes. Section 33 enumerates an exemption from taxation for certain items of tangible property—human whole blood, plasma, blood products, blood derivatives, and human body parts held in a bank for medicinal purposes. ■ On the other hand, it has long been recognized that the nature of the corporate franchise tax is not one on tangible property. Rather, the franchise tax is a tax on an intangible right, i.e., the "privilege of exercising its corporate franchises within this state." (Rev. & Tax. Code, § 23151, subd. (a); *Woodland Production Credit Assn. v. Franchise Tax Board* (1964) 225 Cal.App.2d 293, 297 [37 Cal.Rptr. 231]; *Bank of California v. San Francisco* (1904) 142 Cal. 276, 284, 286 [75 P. 832].)

"The franchise tax is imposed on every nonfinancial corporation organized in California and foreign corporation doing business in California. ([Rev. & Tax. Code,] § 23151.1.) It taxes that corporation's privilege of doing business in a given year (the taxable year), measured by a percentage of its net income in the immediately preceding year (the income year)." (*Handlery Hotels, Inc. v. Franchise Tax Bd.* (1995) 39 Cal.App.4th 1360, 1362 [46 Cal.Rptr.2d 525].)

"The doctrine of the taxability of corporate franchises, without reference to the character of the property in which their capital stock or their deposits are invested, has long since been established. [Citations.] Accordingly, it was early held that 'where a tax is lawfully imposed upon the exercise of privileges within the taxing power of the state or nation, the measure of such tax may be the income from the property of the corporation, although a part of such income is derived from property in itself nontaxable'. *(Flint v. Stone*

*Tracy Co.* [(1911)] 220 U.S. 107, 163 [. . . 55 L.Ed. 389, 31 Sup. Ct. Rep. 342].)" *(The Pacific Co., Ltd. v. Johnson* (1931) 212 Cal. 148, 155 [298 P. 489].)

As stated by the court in *Alpha Therapeutic Corp. v. County of Los Angeles, supra,* 179 Cal.App.3d 265: "The statute [section 33] exempts substances or products from taxation, not the business that collects, stores, or produces them." (*Id.* at p. 273.) "It does not follow, however, that in exempting these substances from taxation the Legislature intended likewise to exempt the businesses which trade in or process them." (*Ibid.*; see fn. 1, *ante.*) Similarly, had the Legislature wished section 33 to exempt businesses like Alpha from the franchise tax, it could have used express language to accomplish this result; it clearly did not do so.

Article 1 of chapter 4 of part 11 of division 2 of the Revenue and Taxation Code (§ 23701 et seq.) contains provisions providing exemptions from the franchise tax. In each instance, the Legislature has granted such an exemption by describing the type of organization which is exempt from the franchise tax, including, for example, organizations operated for nonprofit purposes, fraternal beneficiary societies, and religious and charitable corporations. There is no language in section 33 indicating the Legislature intended to identify any organization for purposes of affording it an exemption from the franchise tax.

Citing language in a case holding that a Mississippi sales tax did not violate the commerce clause of the federal constitution, Alpha argues that section 33 should be construed broadly in favor of a tax exemption if the assessment of the franchise tax would produce a "forbidden effect," or an indirect tax on blood or blood products. Alpha cites no pertinent authority for this proposed new principle of statutory construction, which we conclude to be without merit as contrary to the established rules of statutory construction of tax exemptions set out above, as well as contrary to the above cited general principle in *Flint* and *The Pacific Co.*

Alpha's reliance on the mere placement of section 33 in the "general provisions" part of the Revenue and Taxation Code is misplaced and does not indicate that section 33 was intended to afford Alpha an exemption from franchise taxes. This is so, because in 1965, when section 33 was enacted, the Revenue and Taxation Code specified those places where all exemptions from the franchise tax were required to be set out, and section 33 is not located in any of those places. Revenue and Taxation Code former section 23151 provided in pertinent part that "With the exception of financial

corporations, every corporation doing business within the limits of this state and not expressly exempted from taxation *by the provisions of the Constitution of this state or by this part,* shall annually pay to the state, for the privilege of exercising its corporate franchises within this state, a tax according to or measured by its net income . . . ." (Italics added.) The language "this part" refers to former part 11 of division 2 of the Revenue and Taxation Code.[2] Part 11 of division 2 sets out at section 23701 et seq. corporate franchise tax exemptions for specified organizations. Because the Legislature in 1965 is presumed to have been aware of the language of section 23151, we cannot infer from the placement of section 33 *outside* of part 11 of division 2 of the Revenue and Taxation Code an intention to create with section 33 an exemption from the corporate franchise tax.

The meager legislative history in our record also supports FTB's interpretation of section 33, not Alpha's interpretation. In January 1965, Assembly Bill No. 345 (1965 Reg. Sess.) was introduced to add section 1606.5 to the Health and Safety Code; the proposed section provided that "Human whole blood, plasma, blood products, and blood derivatives shall not be considered to be property for any purpose." This Assembly bill was apparently redrafted to omit the enactment of a section in the Health and Safety Code; rather, the bill was redrafted to add section 33 to the Revenue and Taxation Code; there is no evidence that section 1606.5 was added to the Health and Safety Code.[3] The bill which proposed the addition of section 33 was apparently not accompanied by any legislative counsel's digest. However, a June 16, 1965, letter from Assemblyman Thelin, who introduced the bill, to Governor Edmund Brown, urged the Governor to approve the bill, and stated that "The

---

[2]The current version of Revenue and Taxation Code section 23151, subdivision (a), contains identical language to that part of former section 23151 quoted *ante*.

[3]Health and Safety Code section 1606, enacted in 1963, provides that the "procurement, processing, distribution, or use of whole blood, plasma, blood products, and blood derivatives for the purpose of injecting or transfusing the same . . . into the human body shall be construed to be, and is declared to be, for all purposes whatsoever, the rendition of a service . . . and shall not be construed to be, and is declared not to be, a sale of such whole blood, plasma, blood products, or blood derivatives, for any purpose or purposes whatsoever." Case law has construed Health and Safety Code section 1606 as affording a basis for the proposition that commercial vendors of blood products render a service and are not engaged in sales for purposes of subjecting such vendors to strict product tort liability. (*Hyland Therapeutics v. Superior Court* (1985) 175 Cal.App.3d 509, 514 [220 Cal.Rptr. 590].) However, *Hyland* also recognized that "section 1606 does not immunize [commercial vendors] from liability. Rather, its effect is to require that those who make tort claims on the basis of alleged blood-product defects bear the burden of showing that the blood-product manufacturer was either negligently or intentionally at fault." (*Id.* at p. 516.)

We are not aware of any published case which has construed Health and Safety Code section 1606 to have any relevance to the issue of taxation of blood products or of commercial vendors of blood products.

reason for the bill is that historically and traditionally human blood and blood derivatives have been treated as part of the human body and have been exempt from taxation. The State of California has already recognized this and these products are now exempt from the sales tax and have been for many years under an administrative ruling of the Board of Equalization. However, recently Los Angeles County has been taxing blood as personal property. [¶] This taxation will discourage the storage and accumulation of blood products. [¶] . . . Taxes on the product increase their costs and yet the very time these items are needed are during times of emergency when people can least afford any increased cost. [¶] The maintenance of large inventories are necessitated by certain aging requirements established by the Federal health authorities[;] thus the manufacturers of such products cannot avoid the tax by moving them and the only result, therefore, will be tremendously high costs for these products if the taxing authorities are allowed to have their way."

A June 22, 1965, memorandum from the California Disaster Office to Governor Edmund Brown recommended approval of the bill because "it would encourage stockpiling of blood and blood derivatives within the state, rather than driving such supplies into other states to escape taxation as personal property. Such stockpiles constitute a valuable emergency resource in times of disaster."

A June 15, 1965, letter to the Governor from the County Counsel of Los Angeles County urged veto of the bill. County counsel wrote that the bill "would exempt that portion of the business inventory of commercial laboratories and drug wholesalers consisting of blood products from property taxation. [¶] It is difficult to see why an inventory of blood products should be exempted from taxation while other medical supplies in inventory are taxed. The bill is discriminatory in its effect and represents one more inroad into the property tax base. [¶] When the bill was heard in the committees of the legislature reference was made to Red Cross blood banks and other similar organizations which are engaged in performing a public service without profit. These organizations are already exempt from taxation, and the veto of this bill would not affect those organizations in any way. . . . [¶] It is estimated that the exemption provided by Assembly Bill No. 345 will result in a loss of $20,000 a year in revenue to local agencies of government in Los Angeles County by removing property having an annual assessed value of $250,000 from the tax rolls. . . ."

In light of the foregoing, we conclude that the legislative history of section 33 does not support Alpha's construction of the statute as affording it an exemption from the corporate franchise tax.

Alpha's citation to SBE's 1971 Sales and Land Use Tax Annotation No. 495.0045 (Annotation No. 495.0045) is also to no avail. That annotation—captioned Blood Banks—provides: "The transfer of blood by a blood bank for a consideration is a sale within the meaning of Section 6006(a). The sale, however, is exempt under Section 33. The blood bank is not a 'seller' within the meaning of Section 6014 since the sale of blood is not a sale of property 'of a kind the gross receipts from the retail sale of which are required to be included in the measure of the sales tax.' Accordingly, a blood bank is not required by Section 6066 to hold a seller's permit solely by reason of its sales of blood. Anticoagulants which are an integral part of the blood are in the same class as the blood itself for sales and use tax purposes."

In the foregoing annotation, the SBE purports to construe various statutes pertaining to sales and use taxes; the annotation does not address the issue of franchise taxes, and thus affords no support for Alpha's arguments herein. Without addressing the correctness of SBE's conclusion that the sale of blood is exempt from sales tax under section 33 (see fn. 1, *ante*), we note that even if we assume arguendo that section 33 provided a sales tax exemption for the sale of blood, such a construction would not lead to the conclusion that section 33 affords Alpha an exemption from the franchise tax. There is simply no language in section 33 which can be construed to afford Alpha an exemption from the franchise tax.

Alpha argues that because the sales tax is a "privilege tax" for the privilege of selling tangible personal property at retail, and that the sale of blood has long been treated as exempt from the sales tax under section 33, section 33 has indeed been construed to apply to a privilege tax, and the Legislature therefore intended section 33 to apply to the franchise tax.[4] Even assuming, without deciding, that section 33 affords an exemption for sales and use taxes, we decline to construe section 33 or the annotation as affording Alpha an exemption for franchise taxes when there is absolutely no language in the annotation or the statute to support such an exemption.

The foregoing annotation is not binding on this court; rather, the SBE's "interpretation of the sales and use tax statutes and regulations is subject

---

[4]Alpha also intimates that Revenue and Taxation Code section 6364.5 provides evidence that section 33 affords a sales tax exemption for sales of blood. Alpha interprets section 6364.5 as referring to a sales tax exemption for blood products. However, section 6364.5, enacted in 1997, affords a sales tax exemption only for *containers* of blood products; the blood products are described as those that "are exempt from taxation pursuant to Section 33 . . . ." (See fn. 1, *ante*.) Premised on the assumption that section 6364.5 refers to, or interprets section 33 as affording, a sales tax exemption for blood products, Alpha argues that the Legislature indeed intended section 33 to apply to "privilege" taxes even though such taxes are not property taxes "on" blood itself. As explained in footnote 1, we decline to address the issue of whether blood products are exempt from the sales tax.

to independent judicial review." (*Yamaha Corp. of America v. State Bd. of Equalization* (1999) 73 Cal.App.4th 338, 349 [86 Cal.Rptr.2d 362].) ▮ "When an agency is merely construing a statute, as in the case of the annotations here, the question of whether judicial deference to the agency's interpretation is appropriate and, if so, the extent of such deference, is fundamentally situational. [Citation.] Thus, a court must consider complex factors material to the substantive legal issue before it, the particular agency offering the interpretation, and the comparative weight the factors ought in reason to command." (*Id.* at p. 350.) Thus, deference due to the SBS's annotations "depends on 'a legally informed, commonsense assessment of their contextual merit,' which evaluates ' "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." ' " (*Id.* at p. 351.)

In applying the above factors to Annotation No. 495.0045, we conclude that the SBS's one-sentence conclusion that the sale of blood is exempt from the sales tax under section 33 evidences no consideration of the legislative history of section 33, of the language of section 33, the context of other statutory provisions dealing with exemptions for sales and use taxes, or of the traditional and long-standing rules, set out in the case law, for construing statutes affording tax exemptions. Thus, as support for Alpha's contention that the Legislature intended section 33 to apply to the franchise tax, we conclude that the annotation carries little weight.

Alpha suggests that the Legislature has long acquiesced in SBE's interpretation of section 33 with respect to sales taxes because the Legislature has not amended or modified section 33 after the promulgation of Annotation No. 495.0045 in 1971; therefore, suggests Alpha, the Legislature has implicitly accepted the proposition that section 33 applies to "privilege taxes" including the franchise tax. Whatever validity this reasoning may have as to the issue of a sales tax exemption, an issue we decline to address, we conclude that the legislative silence here cannot properly be construed to support the contention that section 33 affords Alpha a franchise tax exemption, as the annotation does not expressly or by implication deal with the issue of franchise taxes.

Moreover, acknowledging that an annotation may not be treated by the same rules as a judicial opinion, we note that legislative silence after a court has construed a statute gives rise at most to an arguable inference of acquiescence or passive approval. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 563 [71 Cal.Rptr.2d 731, 950 P.2d 1086].) "In

the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry. '[L]egislative inaction is " 'a weak reed upon which to lean.' " ' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873].) In this case there can be no inference of legislative acquiescence with respect to the issue of franchise taxes, as neither the annotation nor any subsequent legislation (see fn. 4, *ante*) deals with the issue of franchise taxes.

■ For all of the foregoing reasons, we conclude that Alpha has failed to meet its burden of establishing that section 33 affords it an exemption from the franchise tax.

DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal.

Johnson, J., and Woods, J., concurred.