Filed 3/22/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VALLEY BAPTIST CHURCH,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CITY OF SAN RAFAEL,<br><br>    Defendant and Appellant. | A156171<br><br>(Marin County Super.<br>Ct. No. CIV1703328)<br><br>ORDER MODIFYING<br>OPINION AND<br>DENYING REHEARING<br><br>[NO CHANGE IN<br>JUDGMENT] |

It is ordered that the opinion filed herein on February 26, 2021, be modified as follows:

1. On page 29, the sentence beginning with "In short…", the court shall omit section (f) from the article XIII section 3 reference. The sentence shall now read:

"In short, if public agencies were already exempt from special taxes, under article XIII section 3, there would have been no need to include the specific exemption in Government Code section 53978."

The modification does not change the appellate judgment.  (Cal. Rules of Court, rule 8.264(c)(2).)

Respondent's petition for rehearing is denied.

Dated:                                                    _____

                                                    Humes, P.J.

1

Filed 2/26/21 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VALLEY BAPTIST CHURCH,<br>    Plaintiff and Respondent,<br>v.<br>CITY OF SAN RAFAEL,<br>    Defendant and Appellant. | A156171<br><br>(Marin County Super.<br>Ct. No. CIV1703328) |

The voters of the City of San Rafael approved by a two-thirds vote of the electorate a Paramedic Services Special Tax (Paramedic Tax) in 2010 to defray the cost of paramedic services within city boundaries. In September 2017, Valley Baptist Church (Valley Baptist) filed the instant action challenging the constitutionality of the Paramedic Tax as applied to a place of worship. Specifically, Valley Baptist argued that it is exempted from payment of all property taxes under article XIII, section 3(f) of the California Constitution, including the Paramedic Tax. This appeal presents a novel question of constitutional interpretation: whether the religious exemption authorized by article XIII, section 3(f) extends to non ad valorem special property taxes such as the Paramedic Tax.[1] We conclude that it does not, and therefore reverse the trial court's judgment.

---

[1] All article references are to the California Constitution. We use the terms "non-ad valorem special property tax" and "special property tax" interchangeably to refer to a special tax assessed by an agency upon a parcel

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this matter are not meaningfully in dispute. On November 2, 2010, voters of the City of San Rafael (City) enacted Ballot Measure I, a measure imposing an annual special tax up to a maximum of 14 cents per square foot on all nonresidential structures in the City to fund paramedic services. (San Rafael Ord. Nos. 1891 & 1958; see also San Rafael Mun. Code, §3.28.040.) An annual special tax up to a maximum of $108 on each residential unit in the City was also raised for similar reasons. (San Rafael Ord. No. 1891; see also San Rafael Mun. Code, § 3.28.050.) The stated purpose of Measure I was to "fully fund" the City's paramedic service program. (San Rafael Ord. No. 1891; see also San Rafael Mun. Code, §§ 3.28.020, 3.28.040, 3.28.050.)

Originally approved by City voters in 1979, the Paramedic Tax applied only to residential property. In 1988, the voters extended the Paramedic Tax to cover nonresidential structures as well. The rationale for this change was explained by then-Fire Chief Robert Marcucci as follows: "Many of our calls for service are attributed to non-residential occupancies, but they are not funding any portion of the Paramedic Budget. It could be stated that residential units are subsidizing Paramedic calls which occur in non-residential occupancies. Though some non-residential occupancies generate monies for the City in the form of Business License Fees and Sales Tax, these funds basically support the Fire Department and other City Departments, not the Paramedic Program."

In 2015-2016, the City examined its tax rolls and determined that nonresidential properties that were designated as "subject to exemption" by

---

of property or as an incident of property ownership under the requirements set forth in article XIII A, section 4. (See art. XIII D, § 3(a)(2).)

the Assessor had been inadvertently omitted from the Paramedic Tax assessment, even though residential properties similarly designated were being charged. City officials rectified this oversight prospectively and sought to collect a portion of the Paramedic Tax that had gone unpaid. One of the property owners which received notice of the Paramedic Tax levy was Valley Baptist.

Valley Baptist is a nonprofit religious organization that operates a church on property within city boundaries. The two buildings on the property are used by Valley Baptist exclusively for religious worship. In October 2016, Valley Baptist received a letter from the City indicating that Valley Baptist had not been correctly assessed for the Paramedic Tax. The City requested payment of past due special taxes for fiscal years 2013-2014, 2014-2015, and 2015-2016 in the amount of $13,644. Valley Baptist objected to the City's request, arguing that as a religious institution it was exempted from payment of the Paramedic Tax under the California Constitution. (See art. XIII, § 3(f) [exempting "[b]uildings, land on which they are situated, and equipment used exclusively for religious worship" from "property taxation"].) Valley Baptist eventually paid the amount due under protest.

In September 2017, Valley Baptist filed the instant action for declaratory relief and damages in Marin County Superior Court. The complaint sought a declaration that the Paramedic Tax was unconstitutional as applied to Valley Baptist and that Valley Baptist was therefore exempt from payment of the special tax. The complaint additionally sought a refund of any monies paid by Valley Baptist under the Paramedic Tax.

The City filed a motion for judgment on the pleadings in March 2018, which, after briefing and hearing, the trial court denied. In reaching its decision, the trial court explained: "The parties have not cited (and the court

3

has been unable to find) any case which has addressed the issue of whether constitutional religious exemptions from property taxation apply to special taxes. In this case, the court discerns no legal basis for concluding that the special tax at issue is not a form of property taxation." The matter proceeded to a bench trial.

Valley Baptist renewed its argument that the trial court should declare that the Paramedic Tax was unconstitutionally applied to the church and that Valley Baptist is exempt from paying the tax. The City maintained that the Paramedic Tax is an excise tax imposed on property owners to fund a service they require and is therefore not subject to the constitutional exemption from property taxation. The City additionally asserted that Valley Baptist is not exempt under the state constitution from non-ad valorem special property taxes.[2]

The trial court issued a tentative statement of decision in which it determined that Valley Baptist was constitutionally exempt from payment of the Paramedic Tax. The trial court began by considering at length whether the Paramedic Tax should be deemed a property tax or an excise tax, concluding it was best described as a property tax because it "is imposed upon the *mere ownership*, and not the *use*, of property." It reasoned that

---

[2] The ad valorem property tax imposed under section 1 of article XIII and permitted by article XIII D, is, as its name suggests, a general tax based upon the value of the property assessed. (See Rev. & Tax. Code, § 2202 [" 'Ad valorem property taxation' means any source of revenue derived from applying a property tax rate to the assessed value of property."].) Special taxes authorized by section 4 of article XIII A, in contrast, cannot be ad valorem taxes. (Art. XIII A, § 4(b) ["Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, *except ad valorem taxes on real property* or a transaction tax or sales tax on the sale of real property within such City, County or special district," italics added].)

"[a]lthough the tax is clearly meant to fund a city service, it is imposed on owners regardless [of] whether they use those services" or whether the structure is occupied or used by a tenant.[3]

The trial court then rejected the City's argument that the religious exemption from property taxation, found in article XIII, section 3(f), is limited to ad valorem property taxes. The court determined that "[a] special tax 'assessed by any agency upon any parcel of property or upon any person as an incident of property ownership' (art. [XIII D], § 3(a)(2)), such as the Paramedic Tax, falls within the plain meaning of 'property taxation' " for purposes of the article XIII exemptions. The court observed that article XIII D, added by the voters under Proposition 218 in November 1996, " 'allows only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge.' " (quoting *Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1307). Had the Legislature intended the exemption " 'from property taxation' " to apply only to ad valorem property taxes, the court reasoned, "it could have made that clear when it added the provision for special taxes or when it added section 3(a) of article XIII D." It therefore found the Paramedic Tax invalid as applied to Valley Baptist and determined that Valley Baptist was entitled to

---

[3] As this court earlier explained: "At the most general level, a property tax is a tax whose imposition is triggered merely by the ownership of property. [Citation.] An excise tax, by contrast, is a tax whose imposition is triggered not by ownership but by some particular use of the property or privilege associated with ownership, such as the transfer of the parcel to a new owner. . . . Excise taxes are not subject to the California constitutional provisions restricting imposition of property taxes." (*Thomas v. City of East Palo Alto* (1997) 53 Cal.App.4th 1084, 1088-1089 (*Thomas*); see also *City of Oakland v. Digre* (1988) 205 Cal.App.3d 99, 104-109 (*Digre*).)

a refund, with applicable interest, of the special taxes that had already been paid.

The trial court adopted its statement of decision on November 7, 2018 and issued a related judgment. On November 21, 2018, the City filed notice of its intention to move for a new trial and/or to vacate the judgment. While the City's post-trial motions were pending, the City adopted an amendment to the Paramedic Tax on December 3, 2018 (Ordinance). The Ordinance, which states that it is "declaratory of existing law," codified the City's process for exempting taxpayers from all or a portion of the Paramedic Tax based on low or non-occupancy of the property in question.

The City's post-trial motions challenged the trial court's two legal conclusions in the case—that the Paramedic Tax is a property tax and that the religious exemption under article XIII, section 3(f) applies to special property taxes. The City additionally urged the court to reconsider its conclusion that the Paramedic Tax is a property tax based on the Ordinance, which expressly allows for avoidance or reduction of the Paramedic Tax for vacant or otherwise underutilized structures. The trial court rejected the City's arguments and denied its post-trial motions on January 4, 2019. This appeal followed.

## II. DISCUSSION

### A. Standards of Review and Constitutional Interpretation

The trial court's determination that Valley Baptist is exempt from a duly enacted special property tax under article XIII, section 3(f) was based upon its "plain meaning" review of that exemption and other taxation articles added by later initiative measures. We review such questions of law and constitutional interpretation de novo. (*Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 403 (*Crawley*); see

6

*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24
Cal.4th 830, 839 (*Apartment Assn.*).)

Our task on appeal is "to determine and effectuate the intent of those
who enacted the constitutional provision at issue." (*Crawley, supra*, 243
Cal.App.4th at pp. 409-410.) " 'The principles of constitutional interpretation
are similar to those governing statutory construction.' " (*Richmond v. Shasta
Community Services Dist.* (2004) 32 Cal.4th 409, 418; *Lungren v. Deukmejian*
(1988) 45 Cal.3d 727, 735 (*Lungren*).) "[W]e begin by examining the
constitutional text, giving the words their ordinary meanings." (C*rawley*, at
pp. 409-410; see *S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 379
(*Berti*); *Lungren, supra*, 45 Cal.3d at p. 735.) "If the language is clear and
unambiguous there is no need for construction, nor is it necessary to resort to
indicia of the intent of the Legislature (in the case of a statute) or of the
voters (in the case of a provision adopted by the voters)." (*Lungren,* at p.
735.) But "[l]iteral construction should not prevail if it is contrary to the
legislative intent apparent in the statute." (*Ibid.*) Moreover, when " 'the
language permits more than one reasonable interpretation, . . . the court
looks "to a variety of extrinsic aids, including the ostensible objects to be
achieved, the evils to be remedied, the legislative history, public policy,
contemporaneous administrative construction, and the statutory scheme of
which the statute is a part." ' " (*Berti*, at p. 379.)

When the language of an initiative measure is ambiguous, " 'we refer to
other indicia of the voters' intent, particularly the analyses and arguments
contained in the official ballot pamphlet.' " (*Robert L. v. Superior Court*
(2003) 30 Cal.4th 894, 901.) In addition, "[a]pparent ambiguities in a
constitutional provision 'frequently may be resolved by the contemporaneous
construction of the Legislature or of the administrative agencies charged with

7

implementing the new enactment.' " (*Heckendorn v. City of San Marino* (1986) 42 Cal.3d 481, 488 (*Heckendorn*).)

Our consideration of Valley Baptist's tax exemption claim is also guided by the long-established principle that "[c]onstitutional provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will be neither enlarged nor extended beyond the plain meaning of the language employed." (*Cedars of Lebanon Hosp. v. County of Los Angeles, et al.* (1950) 35 Cal.2d 729, 734 (*Cedars of Lebanon*); see also *Alpha Therapeutic Corp. v. Franchise Tax Bd.* (2000) 84 Cal.App.4th 1, 5 (*Alpha Therapeutic*) [" 'Statutes granting exemption from taxation must be reasonably, but nevertheless strictly, construed against the taxpayer.' "].) Taxpayers have the burden of showing that they clearly come within the exemption. (*Alpha Therapeutic*, at p. 5; *Cedars of Lebanon*, at p. 734.) Thus, " '[a]n exemption will not be inferred from doubtful statutory language.' " (*Alpha Therapeutic*, at p. 5; see *ibid.* ["[a]ny doubt must be resolved against the right to the exemption."].)

**B.    Article XIII**

In the November 1974 election, voters approved revisions to article XIII of the California Constitution, which dealt with the taxing powers of state and local government. (Prop. 8, as approved by voters, Gen. Elec. (Nov. 5, 1974); see 1 Flavin, Taxing Cal. Property (4th ed. 2019), § 6:3 (Taxing California Property).) Section 1 provides in relevant part: "Unless otherwise provided by this Constitution or the laws of the United States . . . [¶] . . . [a]ll property is taxable and shall be assessed at the same percentage of fair market value." (Art. XIII, § 1, subds. (a) & (b) ["All property so assessed shall be taxed in proportion to its full value."]. Section 1 establishes the principle of uniform assessment and taxation and confirms the Legislature's power to

8

tax all forms of property.[4]  (See Grodin et al., The California State Constitution (2d ed. 2016) at p. 312 (Grodin).).)

Article XIII, section 3 exempts from "property taxation" various forms of property, including "[b]uildings, land on which they are situated, and equipment used exclusively for religious worship." (Art. XIII, § 3(f); see Rev. & Tax. Code, § 206.)  In addition, section 4 permits the Legislature to exempt from "property taxation" other kinds of property, including "[p]roperty used exclusively for religious, hospital, or charitable purposes" by nonprofit organizations.  (Art. XIII, § 4, subd. (b).)  The Legislature has adopted a statutory welfare exemption in accordance with this authorization.  (See Rev. & Tax. Code, § 214.)

Article XIII does not disclose whether places of worship are exempted from special property taxes under section 3(f).  There is no mention of a "special property tax" in article XIII because, as we explain below, such category of taxation did not come into existence until the passage of Proposition 13 in 1978.  We must therefore look to other extrinsic aids, including the ballot materials and history of article XIII and its legislative antecedents, to determine if the voters intended to exempt places of worship from this type of taxation.  We begin with the historical context in which the religious exemption arose.

---

[4] Section 2 addresses the taxation of personal property, granting the Legislature broad authority to "classify such personal property for differential taxation or for exemption."  Most forms of personal property have been exempted from taxation by the Legislature pursuant to this power.  (Pope & Goodrich, *California Property Tax Exemptions, Exclusions, Immunities, and Restrictions on Fair Market Valuation—Or, Whatever Became of Full Value Assessment?* (1987) 18 Pacific L.J. 943, 945-946 (*Property Tax Exemptions*).)

9

### i. *History of the Religious Exemption in California*

"California's first constitution, adopted in 1849, broadly stated that 'Taxation shall be equal and uniform . . .' California's first Legislature nevertheless exempted property used for churches, cemeteries, libraries, and scientific institutions." (*Property Tax Exemptions* at pp. 944-945, footnotes omitted.) In 1868, the California Supreme Court struck down these exemptions, concluding that they conflicted with the state constitutional requirement that all taxation be equal and uniform. (*People v. McCreery* (1868) 34 Cal.432 (*McCreery*).)

The constitutional provision at issue stated: " 'Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law.' " (*McCreery, supra*, 34 Cal. at p. 448.) Noting that "the section, as adopted, limited a property tax to an ad valorem tax on all property" (*id.* at p. 452, italics omitted), the *McCreery* court determined that the Legislature was without power to create exemptions for certain types of property (*id.* at pp. 453-459): "If the power exists in the Legislature to exempt growing crops, mining claims and other property mentioned, the exemption may be carried still further, until property of one class is made to bear the whole burden of taxation. The exemption, so far as it includes private property, is in plain violation of the command of the Constitution." (*Id.* at p. 457).

The state constitution was amended in 1879, omitting the "equal and uniform" requirement for ad valorem taxation and exempting growing crops, public schools, and government-owned property. (*Property Tax Exemptions* at p. 945.) Further amendment to the constitution in 1894 exempted public libraries, free museums, fruit and nut-bearing trees, and grapevines. (*Ibid.*) "This began an ever-expanding series of constitutional amendments and

10

legislative enactments to exempt or exclude property from taxation. Early in this century additional exemptions were added for churches in 1900, veterans in 1911, vessels and colleges in 1914, orphanages in 1920, and immature trees and cemeteries in 1926." (*Ibid*.) While the constitutional exemption was self-executing, the Supreme Court concluded that the Legislature had the power to enact legislation providing reasonable regulations for its exercise. (*Chesney v. Byram* (1940) 15 Cal.2d 460, 463-472.)

In 1944, the voters approved a constitutional amendment permitting the Legislature to exempt from taxation all or any portion of property used exclusively for religious, hospital or charitable purposes if certain conditions were met. (*Property Tax Exemptions* at p. 946; see art. XIII, § 4, subd. (b).) The Legislature did so. (See Rev. & Tax. Code, § 214 [statutory welfare exemption].) In *Cedars of Lebanon*, *supra*, 35 Cal.2d 729, the Supreme Court considered the scope of the welfare exemption in a case involving several nonprofit hospitals seeking a refund of property taxes levied against certain buildings used to support their hospital operations. (*Id*. at pp. 731-733.) The court held that property used for a nursing school and to house essential hospital staff qualified for the tax exemption. (*Id*. at pp. 738-740.)

*Cedars of Lebanon* also considered whether the hospitals should be exempt from a levy under the Los Angeles County Flood Control Act. Although denominated a "tax," a long line of cases reaching back to 1917 had concluded that the levy was actually a special assessment "against the real property of the district on the basis of benefits to be received." (*Cedars of Lebanon*, *supra*, 35 Cal.2d at p. 747.) The Supreme Court concluded: "It is well settled that exemptions of private property from taxation do not extend to special assessments, levied upon the basis of equivalent benefit, unless specifically so provided." (*Cedars of Lebanon*, at p. 747.) It rejected the

11

hospitals' argument that the flood control levy was a "tax" for purposes of the welfare exemption because it was calculated on an ad valorem basis, explaining: "the character of a levy as a tax or an assessment depends upon whether it is exacted in compensation for a benefit to the property upon which it is made a charge, and its classification is not affected by the method adopted for collection." (*Id.* at p. 748.) Thus, *Cedars of Lebanon* established that certain property-related exactions such as special "assessments" are not property taxes subject to exemption by religious or nonprofit organizations.[5]

In *Estate of Simpson* (1954) 43 Cal.2d 594 (*Estate of Simpson*), the Supreme Court reaffirmed the longstanding principle that "[t]he constitutional exemptions from taxation refer only to property taxes," and not other forms of taxation such as local assessments or excise taxes. (*Id.* at pp. 597-598.) The court addressed whether certain death benefits paid out by a county retirement system were exempt from the inheritance tax. A statutory exemption provided that such benefits were " 'exempt from taxation, whether

---

[5] The distinction between a property tax and an assessment remains unaltered today. Article XIII C, section 1 excludes from the definition of a "tax" any "assessments and property-related fees imposed in accordance with the provisions of article XIII D." (Art. XIII C, § 1(e)(7).) Article XIII D defines an "[a]ssessment" as "any levy or charge upon real property by an agency for a special benefit conferred upon the real property." (*Id.*, § 2, subd. (b); see also *San Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 162 (*San Marcos*) [a special assessment is "a charge imposed on particular real property for a local public improvement of direct benefit to that property, as for example a street improvement, lighting improvement, irrigation improvement, sewer connection, drainage improvement, or flood control improvement"], superseded by statute on other grounds as recognized in *City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341, 353.) While a special benefit assessment is not a tax, article XIII D, section 4 sets forth a series of procedures and requirements for the levy of an assessment.

12

state, county, municipal, or district.' " (*Id.* at p. 596.)  The Supreme Court determined the exemption did not apply, concluding "[t]he inheritance tax is not a tax on the property itself, but is an excise imposed on the privilege of succeeding to property upon the death of the owner."  (*Id.* at p. 597-598; see also *Ingels v. Riley* (1936) 5 Cal.2d 154, 159-160, 163 [holding that a motor vehicle license fee was an excise tax charged for use of vehicles on highways, and not a property tax subject to the constitutional exemption for veterans].)

The *Simpson* court explained that "[o]ur constitutional requirement of uniformity and equality of taxation has always been construed to apply to direct property taxes (now art. XIII, § 1) and to have no bearing upon an excise or privilege tax . . . or license fees assessed for the right to carry on certain businesses."  (*Estate of Simpson, supra,* 43 Cal.2d at p. 597.)  In addition, "[l]ocal assessments do not come within the meaning of the word 'tax' as used in the constitutional provision exempting lands of the state from taxation."  (*Ibid.*)  Rather, "[t]he constitutional exemptions from taxation refer only to property taxes" such as "property used for religious, hospital and charitable purposes" and "church property."  (*Id.* at pp. 597-598.)[6]

---

[6] The respondent in *Estate of Simpson* argued that because no state property tax existed at the time the statutory exemption was enacted, the exemption clause would be rendered meaningless if it did not apply to inheritance, gift, and income taxes as well.  (*Estate of Simpson, supra,* 43 Cal.2d at p. 601-602.)  The court disagreed, noting that prior to 1910, "taxes for state purposes were raised in the same manner as county taxes, that is, by ad valorem levy upon all taxable property in the state."  (*Id.* at p. 602.)  "Thus in the event that the Legislature should determine in any year to adopt some plan of ad valorem taxation for state purposes (art. XIII, § 1), [the exemption statute] would serve to exempt the rights, benefits and money in the retirement fund from such taxation."  (*Id.* at p. 602.)  It is apparent from this exchange that "property taxation" is synonymous with the ad valorem property tax.

The settled principle that a tax exemption provision must be strictly construed against the taxpayer also mandated this result. Because "principles of statutory construction require any doubt be resolved against the right to the exemption," the Supreme Court concluded it "would not be justified in holding the exemption from taxation clause to apply beyond the limits of property taxation, and if further extension is deemed appropriate so as to include excise or privilege taxes, such as the state inheritance tax, the act should be so clarified by the Legislature in unmistakably clear language." (*Id.* at pp. 602-603.)

Several principles can be gleaned from the foregoing history. First, constitutional exemptions to property taxation applied only to direct property taxes and not to other forms of taxation such as an excise or use tax. Second, since the first state constitution of 1849, the only form of "property taxation" was the ad valorem property tax, a general tax levied in proportion to the assessed value of property. Third, although certain exactions may be property-related, such as a special assessment for flood control improvement, long-standing precedent established that these exactions were not "property taxes" subject to exemption by religious or nonprofit organizations. Finally, exemptions from property taxation must be strictly construed against the right to the benefit, and any intent to extend the tax exemption must be conveyed in "unmistakably clear language." (*Estate of Simpson, supra,* 43 Cal.2d at p. 603.) Against this backdrop, we examine article XIII's ballot materials to determine if the voters expressed a clear intent to extend the religious exemption to a species of taxation that had not yet been devised— the non-ad valorem special property tax.

14

### ii.   Proposition 8

Proposition 8 was placed on the ballot by the Legislature for the express purpose of "amending, adding, and repealing various articles and sections" of the state Constitution, including article XIII.  (Ballot Pamp., Gen. Elec. (Nov. 5, 1974), text of Prop. 8, preamble, p. 72.)  No argument was offered in opposition to Proposition 8.  The argument in favor described the proposal as follows:  "Proposition 8 revises article XIII of our Constitution. . . . [I]t makes only technical changes in the Constitution and clarifies the meaning of existing sections. [¶]. . . This measure originated in the Constitution Revision Commission.  The Commission's recommendations were further refined by a blue ribbon 'task force' made up of staff from both Houses of the Legislature, the Department of Finance, and a group of outside experts.  The result was this non-controversial measure which was adopted by both Houses of the Legislature with only one dissenting vote. [¶] The purpose of this amendment is not to make a change in our present tax structure, but to make the Constitution more readable and workable. . . . This means that the essence of the article is retained, but made more understandable."  (Ballot Pamp., Gen. Elec. (Nov. 5, 1974), argument in favor of Prop. 8, p. 31.)[7]

In contrast, the analysis by the Legislative Analyst set forth in the ballot materials did acknowledge that some changes were made by the

---

[7] By order dated May 6, 2019, we granted City's request that we take judicial notice of the ballot materials for Propositions 8, 13, and 218.  On our own motion, we additionally take judicial notice of the ballot materials for Propositions 93 and 160.  (See Evid. Code, §§ 452, subd. (c), 459, subd. (a); *St. John's Well Child & Family Center v. Schwarzenegger* (2010) 50 Cal.4th 960, 967, fn. 5; *Kidd v. State of California* (1988) 62 Cal.App.4th 386, 407, fn. 7.)  We deny the remainder of the City's judicial notice request—which was

15

proposal.  As relevant here, it identified among the "more significant" differences the following:  "The present Constitution exempts from property taxation churches and other places of religious worship, except that if the church pays rent to the owner of the property, the exemption does not apply.  This proposition changes this rule so that the exemption will apply to a place of religious worship whether it is rented or owned."  (Ballot Pamp., Gen. Elec. (Nov. 5, 1974), analysis of Prop. 8 by Legis. Analyst, p. 30.)  The authorized legislative history for Proposition 8 confirms that this was the only change to the religious exemption, which was otherwise "retained."  (Constitutional Revision Task Force, Proposed Revision of Article XIII California Const., Assem. J. (May 16, 1974) Appen. at p. 13246 (Task Force Report); see also 1 Taxing Cal. Property § 6:3 [noting Legislature adopted the Task Force Report " 'as part of the public record and as a statement of legislative intent' "], citing Stats. 1974, ch. 870, § 78.)  Similarly, the "substance" of the constitutional authorization for the welfare exemption was also "retained," with only minor changes.  (Task Force Report at p. 13255 [noting only that specific types of owners were "broadened to the more generic categories of nonprofit corporations and charitable trusts"].)

The thrust of this legislative history is that, as a general matter, Proposition 8 was not intended to make significant substantive alterations to California's property tax structure, and more specifically, the religious exemption remained largely unchanged from its pre-1974 incarnations.  "In the absence of evidence of a contrary legislative or popular intent, terms used in a constitutional amendment are normally construed in light of existing statutory definitions or judicial interpretations in effect at the time of the

deferred until consideration of the merits of this appeal—as unnecessary to our decision.

16

amendment's adoption." (*Heckendorn*, *supra*, 42 Cal.3d at p. 487.)  Given the history and judicial interpretation of the religious exemption detailed above, it seems clear that the religious exemption from "property taxation" as adopted in 1974 was intended to apply solely to general ad valorem property taxes.

Indeed, Valley Baptist concedes the point that when article XIII was enacted in 1974, the only mode of property taxation extant in California was the ad valorem property tax.  This conclusion is further supported by the structure of the 1974 revision of article XIII.  As stated above, section 1 of article XIII broadly declares that " [a]ll property is taxable and shall be assessed at the same percentage of . . . full value"—i.e., on an ad valorem basis.  (See also Rev. & Tax. Code, § 2202 [" 'Ad valorem property taxation' means any source of revenue derived from applying a property tax rate to the assessed value of property."].)  By adopting exemptions from "property taxation" several sections later in the same article, one may reasonably conclude that the voters intended to provide exemptions solely from *ad valorem* property taxation.  Accordingly, were we construing sections 3 and 4 of article XIII shortly after their adoption in 1974, we might very well have concluded that the intent of the Legislature and the electorate to create exemptions from ad valorem property taxation was apparent on the face of the provision and consistent with the plain meaning of the term "property taxation."

Moreover, since its adoption in 1974, article XIII has only been amended twice, and not in any way relevant to the religious exemption.  For example, section 3 of article XIII exempts up to $1000 of the assessed value of property from "property taxation" if the owner is an active or honorably discharged member of the armed forces, or the parent or unmarried spouse of

17

a deceased veteran.  (Art. XIII, § 3(o), (p) & (q).)  Proposition 93, a legislatively referred constitutional amendment approved by the voters on November 8, 1988, deleted certain residency requirements for the veterans' property tax exemption which conflicted with recent United States Supreme Court precedent.  (Ballot Pamp., Gen. Elec. (Nov. 8, 1988), analysis of Prop. 93 by Legis. Analyst, pp. 60-61 & p. 123 [text of provision]; Art. XIII, § 3(o), (p) & (q).)  The amendments enacted by Proposition 93 did not impact the scope of the religious exemption or redefine the term "property taxation."

The second amendment to article XIII was adopted under Proposition 160 on November 3, 1992 as a legislatively referred constitutional amendment.  Proposition 160 amended section 4(a) of article XIII, permitting the Legislature to expand the state's disabled veterans' exemption to include the homes of unmarried surviving spouses of persons who died while on active military duty as a result of a service-related injury or disease.  (Ballot Pamp., Gen. Elec. (Nov. 3, 1992), analysis of Prop. 160 by Legis. Analyst and arguments for and against, pp. 28-31, p. 68 [text of provision]; art. XIII, § 4(a).)  No alteration was made to the scope of the religious exemption or to the definition of "property taxation."

In short, there is nothing in article XIII—either in the text of the article itself or in ballot materials adopting or revising its provisions—that indicates the religious exemption under section 3(f) was intended to cover special property taxes.  Nevertheless, the trial court here concluded that a special property tax "falls within the plain meaning" of property taxation for purposes of article XIII, section 3.  The trial court reached this conclusion after analyzing the religious exemption in view of later-enacted voter initiatives—most predominately Propositions 13 and 218—whose

18

constitutional provisions have extensively altered property-related taxation in this state.

We thus turn to an examination of Propositions 13 and 218 to determine if the constitutional articles added by these initiative measures evince a clear intent by the electorate to extend the scope of article XIII exemptions to special property taxes. Indeed, Valley Baptist urges us to adopt this approach, arguing that the passage of Propositions 13 and 218 "present the sort of changed conditions" we must account for "in construing article XIII, § 3(f)."

## C. Later-Enacted Tax Initiative Measures

Over the course of several decades, voters have enacted a series of constitutional initiative measures aimed at increasing voter control over the ability of state and local government to raise revenue. (See *Wilde v. City of Dunsmuir* (2020) 9 Cal.5th 1105, 1112.) "The series of reforms began with Proposition 13, a ballot initiative passed in 1978 to cap increases in property taxes and assessments, as well as other state and local taxes. Then, in 1996, voters passed Proposition 218, which further curbed state and local government authority to generate revenue through taxes and other exactions. Finally, in 2010, voters approved Proposition 26, which expanded the reach of these limitations by broadening the definition of 'tax' to cover 'any levy, charge, or exaction of any kind imposed by a local government,' subject to several specified exceptions." (*Ibid.*)

### i. Proposition 13

Article XIII A, adopted in June 1978 as an initiative measure popularly known as Proposition 13, "significantly altered the system of real property taxation in this state." (*Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 857.) Proposition 13 added article XIII A to the California

19

Constitution " 'to assure effective real property tax relief by means of an "interlocking 'package' " ' of four provisions. [Citation.] The first provision capped the ad valorem real property tax rate at 1 percent (art. XIII A, § 1); the second limited annual increases in real property assessments to 2 percent (art. XIII A, § 2); the third required that any increase in statewide taxes be approved by two-thirds of both houses of the Legislature (art. XIII A, § 3); and the fourth required that any special tax imposed by a local government entity be approved by two-thirds of the qualified electors (art. XIII A, § 4)." (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 10 (*Citizens for Fair REU Rates*).)

Section 4 of article XIII A provides in full: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, *except ad valorem taxes on real property* or a transaction tax or sales tax on the sale of real property within such City, County or special district." (Art. XIII A, § 4, italics added.) Section 4 thus "prohibits the imposition of a special tax that is an ad valorem tax on real property." (*Heckendorn*, *supra*, 42 Cal.3d at pp. 486, 489; see *City of Camarillo v. County of Ventura* (1994) 26 Cal.App.4th 1351, 1355 ["Special taxes are not ad valorem property taxes."].)

Following the passage of Proposition 13, a new type of constitutionally authorized property-related taxation was recognized—the non-ad valorem special property tax. In *Heckendorn*, *supra*, 42 Cal.3d 481, the Supreme Court upheld a special tax to fund police and fire protection based on parcel size which had been approved by the requisite two-thirds vote. (*Id.*, at pp. 483-484, 486-489.) Significantly, the high court concluded that the special parcel tax at issue was not an ad valorem property tax and was therefore authorized under article XIII A, section 4. (*Id.*, at pp. 486-487; see also *Digre*,

20

*supra*, 205 Cal.App.3d at p. 110 ["the non-ad valorem special property tax appears as a new entity in *Heckendorn*"].)  Thereafter, in *Neilson*, *supra*, 133 Cal.App.4th 1296, the Court of Appeal upheld the constitutionality of a flat-rate special parcel tax enacted by a two-thirds vote to fund several specific municipal objectives.  (*Id.* at p. 1310.)  After finding that the parcel tax was a special rather than a general tax, the *Neilson* court rejected the claim that taxes imposed on the basis of property ownership must be levied as an ad valorem tax.  The court held: "[T]he California Constitution does not prohibit a tax on the mere ownership of real property if the tax is a special tax and not an ad valorem tax."  (*Id.* at pp. 1301, 1308, citing art. XIII D, § 3.)

Article XIII A does not reference the article XIII exemptions from property taxation, including the religious exemption.  Nor was any mention made of religious exemptions to property taxation in the official title and summary to Proposition 13 or in the analysis prepared by the Legislative Analyst.  (Ballot Pamp., Primary Elec. (June 6, 1978) pp. 56-60.)  While proponents of Proposition 13 argued to the voters that the measure "DOES NOT remove tax exemptions for churches or charities" (*Id.* at p. 58), nothing about this statement suggests that these existing tax exemptions would be *extended* to include the new special taxes authorized by section 4 of article XIII A.

On the contrary, the ballot materials seem to describe special taxes as distinct from the ad valorem "property taxes" subject to exemption.  For example, according to the statement of the Legislative Analyst, Proposition 13 "would: (1) place a limit on the amount of *property taxes* that could be collected by local governments, (2) restrict the growth in the assessed value of property subject to taxation, (3) require a two-thirds vote of the Legislature to increase state tax revenues, and (4) authorize local governments to impose

21

certain *nonproperty taxes* if two-thirds of the voters give their approval in a local election." (*Id.* at p. 56, italics added.) Similarly, the proponents of the ballot measure stated that the initiative "[l]imits *property tax* to 1% of market value . . . and requires *all other tax raises* to be approved by the people." (*Id.* at p. 58.)

The Supreme Court also drew a distinction between "property taxation" and special taxes in several opinions following the enactment of Proposition 13. For example, in upholding the constitutionality of Proposition 13, the Supreme Court described the four provisions of article XIII A as an interrelated package intended "to assure effective real property tax relief," stating: "Since the *total real property tax* is a function of both rate and assessment, sections 1 and 2 unite to assure that *both* variables in the property tax equation are subject to control. Moreover, since any tax savings resulting from the operation of sections 1 and 2 could be withdrawn or depleted by additional or increased state or local levies of *other than property taxes*, sections 3 and 4 combine to place restrictions upon the imposition of such taxes." (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 231, some italics added; see also *Rider v. County of San Diego* (1991) 1 Cal.4th 1, 7 [quoting *Amador Valley*]; *Huntington Park Redevelopment Agency v. Martin* (1985) 38 Cal.3d 100, 105 ["The purpose of section 4 is to prevent the government from recouping its losses from decreased *property taxes* by imposing or increasing *other taxes*," italics added]; *Heckendorn, supra*, 42 Cal.3d at pp. 488-489 [quoting *Huntington Park*].) Thus, judicial construction of the terms "property tax" and "special tax" did not regard these concepts as overlapping (at least until the passage of Proposition 218, discussed below).

22

If special taxes under Proposition 13 were intended for inclusion under the religious exemption provisions of article XIII, it was not made apparent by the text of article XIII A or its accompanying ballot materials. " 'We cannot presume that . . . the voters intended the initiative to effect a change in law that was not expressed or strongly implied in either the text of the initiative or the analyses and arguments in the official ballot pamphlet.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 364.) Proposition 13 therefore does not supply the basis for extending the religious exemption to special property taxes.

### ii. *Proposition 218*

California's voters approved Proposition 218 in 1996, adding articles XIII C and XIII D to the California Constitution. Proposition 218 "was aimed at the perceived abuses committed by local governments in their attempts to raise revenue in the aftermath of Proposition 13. Article XIII D is particularly aimed at special benefits assessments and other levies incident to property ownership, which levies are not considered taxes and thus are not limited by section 4 of Article XIII A." (Grodin, at p. 405.) Article XIII C was intended to settle litigation over the definition of a "special tax" and to require voter approval before any tax was passed by local government. (*Id.* at pp. 398-399.)

"As enacted, article XIII C provided that '[a]ll taxes imposed by any local government shall be deemed to be either general taxes or special taxes.' (Art. XIII C, § 2, subd. (a).) Local governments may not impose, increase, or extend: (1) any general tax, unless approved by a majority vote at a general election; or (2) any special tax, unless approved by a two-thirds vote. (Art. XIII C, § 2, subds. (b), (d).)." (*Citizens for Fair REU Rates, supra*, 6 Cal.5th at p. 10-11.) Article XIII C defines a special tax as "any tax imposed for specific

23

purposes, including a tax imposed for specific purposes, which is placed into a general fund." (Art. XIII, § 1, subd. (d).)[8]

Article XIII D circumscribes the ability of local governments to impose or increase property-related taxes, assessments or fees. Pursuant to article XIII D, "[n]o tax, assessment, fee, or charge shall be assessed by any agency upon any parcel of property or upon any person as an incident of property ownership except: (1) [t]he ad valorem property tax imposed pursuant to Article XIII and Article XIII A[;] [¶] (2) [a]ny special tax receiving a two-thirds vote pursuant to Section 4 of Article XIII A[;] [¶] (3) [a]ssessments as provided by this article[; and] [¶] (4) [f]ees or charges for property related services as provided by this article." (Art. XIII D, § 3, subd. (a).)

Thus, Proposition 218 confirmed that local government can impose a non-ad valorem special tax "upon any parcel of property or upon any person as an incident of property ownership" if the tax is approved by a two-thirds vote of the electorate. (See art. XIII A, § 4 [permitting non-ad valorem special taxes subject to a two-thirds vote]; art. XIII D, § 3, subd. (a)(2) [permitting special taxes imposed as an incident of property ownership if adopted pursuant to section 4 of article XIII A]; *Neilson*, *supra*, 133 Cal.App.4th at p. 1308.) Stated another way, Proposition 218 confirmed that a non-ad valorem

---

[8] Proposition 218 did not define the term "tax." That definition was provided with the passage of Proposition 26 in 2010, which added subdivision (e) to section 1 of article XIII. (*Citizens for Fair REU Rates*, *supra*, 6 Cal.5th at p. 11.) Proposition 26 broadly defined "tax" to include "any levy, charge, or exaction of any kind imposed by a local government," subject to various listed exceptions for charges, fines, and fees. (Art. XIII C, § 1, subd. (e).) A charge that satisfies an exception is, by definition, not a tax, and includes charges imposed for government services or benefits conferred on the payor, charges to recoup the costs of regulatory enforcement, and special assessments and other property-related fees governed by article XIII D. (*Ibid.*)

24

special tax is a "property tax" when it is based on the mere ownership of real property.

Because section 3(a) of article XIII D permits the adoption of a special property tax, the trial court below concluded that such tax falls within the plain meaning of "property taxation" for purposes of the article XIII exemptions. However, both the text of Proposition 218 and the ballot materials are silent on the question of property tax exemptions, including the religious exemption. (See Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis by Legis. Analyst, pp. 72-75, 108-109; see generally art. XIII C & art. XIII D.) Absent from the constitutional text or the legislative materials is any indication that the voters intended to expand the scope of article XIII's religious exemption to cover a new form of property taxation recognized in Proposition 218. While the trial court's reading of these constitutional provisions is certainly plausible, it is by no means apparent from a "plain reading" of article XIII D that it was intended to effectuate a sweeping change of article XIII's religious exemption.

On the contrary, Proposition 218 *did* alter another longstanding exemption, one exempting state and local governments from payment of special assessments. Under prior law, "publicly owned and used property that is exempt from property taxation [was] impliedly exempt from special assessments." (*Loyola Marymount Univ. v. L.A. Unified School Dist.* (1996) 45 Cal.App.4th 1256, 1268.) "The rationale behind a public entity's exemption from property taxes and special assessments [was] to prevent one tax-supported entity from siphoning tax money from another such entity". (*San Marcos*, *supra*, 42 Cal.3d at p. 161; see also *Inglewood v. County of Los Angeles* (1929) 207 Cal. 697, 703 [holding there is an implied exception of public property from special assessments].)

25

Proposition 218 severely curtailed this implied constitutional exemption, doing so expressly. (See art. XIII D, § 4, subd. (a) ["Parcels within a district that are owned or used by any agency, the State of California or the United States *shall not be exempt from assessment* unless the agency can demonstrate by clear and convincing evidence that those publicly owned parcels in fact receive no special benefit." (italics added)]; see Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis of Legis. Analyst, p. 74 [under the measure "local governments must charge schools and other public agencies their share of assessments. Currently, public agencies generally do not pay assessments."].) Thus, the drafters of Proposition 218 understood how to alter the scope of an exemption in "unmistakably clear language." (See *Estate of Simpson*, *supra*, 43 Cal.2d at p. 603.)

The trial court below reasoned that if Proposition 218 had intended the exemption from "property taxation" to apply only to ad valorem property taxes, "it could have made that clear when [adding] the provision for special taxes or when [adding] section 3(a) of article XIII D." But that turns the rule of strict construction on its head. An intent to extend the benefits of a constitutional or statutory tax exemption must be clearly expressed or strongly implied by the text of the provision or its legislative materials, and any doubt must be resolved *against* the assertion of the tax exemption. (*Cedars of Lebanon*, *supra*, 35 Cal.2d at p. 734; *Alpha Therapeutic*, *supra*, 84 Cal.App.4th at p. 5.) Here, Valley Baptist has failed to meet its burden of showing that the limitations imposed under article XIII D, section 3 for the imposition of taxes, charges, and assessments also impliedly exempted places of worship from paying special property taxes.[9] In sum, nothing in

---

[9] Post-Proposition 218 case law tends to use the phrase "local property taxes" loosely when discussing article XIII D. (See *Apartment Assn.*, *supra*,

26

Proposition 218 evinces an intent by the electorate to affect the scope of the religious exemption in section 3(f) of article XIII.

## D. Other Indicia of Constitutional Intent

### i. Legislative Interpretation

Contemporaneous interpretation by the Legislature provides further support for the conclusion that the article XIII exemptions from property taxation apply solely to ad valorem taxes. (See *Heckendorn*, *supra*, 42 Cal.3d at p. 488 ["[a]pparent ambiguities in a constitutional provision 'frequently may be resolved by the contemporaneous construction of the Legislature"]; see also *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 290-291 (*Greene*) ["[W]hen the Legislature has enacted a statute with the relevant constitutional prescriptions clearly in mind. . . . the statute represents a considered legislative judgment as to the appropriate reach of the constitutional provision' " and is subject to " 'significant weight and deference' "].) Shortly after the passage of Proposition 13, the

---

24 Cal.4th at p. 830, 837 ["Proposition 218 allows only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge."]; see also *Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 381 [citing *Apartment Assn.*]; *Crawley*, *supra*, 243 Cal.App.4th at p. 404 [same language]; *Neilson*, *supra*, 133 Cal.App.4th at p. 1307 [same].) These cases, which appear to equate "local property taxes" with a wide variety of property-related exactions, are not altogether helpful in construing the exemption from "property taxation" set forth in article XIII, as it is clear that many property-related fees and assessments are not "property taxes" under the Constitution. (See art. XIII C, § 1(e), (7) [excluding from the definition of "tax" any "assessments and property-related fees imposed in accordance with the provisions of article XIII D"]; Art. XIII D, § 2(e) [defining a "fee" or "charge" as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service."].)

Legislature adopted Government Code section 53978, which expressly authorized a special tax for police and fire protection.  (See Stats. 1979, ch. 397, § 1.)

The statute provides in pertinent part:  "Any local agency which provides fire protection or prevention services . . . or which provides police protection services, may, by ordinance, determine and propose for adoption a special tax for fire protection and prevention provided by the local agency, or a special tax for police protection services provided by the local agency, or both of such special taxes if both such services are provided by the local agency, other than ad valorem property taxes, pursuant to this section. . . Such proposition shall be submitted to the voters of the affected area or zone, or of the district, and shall take effect upon approval of two–thirds of the voters voting upon such proposition.  *The local agency which fixes such a special tax shall not, however, impose such tax upon a federal or state governmental agency or another local agency*."  (Gov. Code, § 53978, subd. (a), italics added.)  Moreover, the special tax authorized by the statute "shall be levied on a parcel, class of improvement to property, or use of property basis, or a combination thereof."  (*Id.*, subd. (b).)

Through its enactment of Government Code section 53978, the Legislature not only authorized a special property tax, it also expressly exempted public agencies from payment of the tax.  But public agencies are already exempted from "property taxation" under article XIII.  (See art. XIII, subd. 3(a) & (b).).  That the Legislature felt it necessary to exempt those agencies from the special tax authorized by Government Code section 53978 is highly persuasive evidence that it continued to view the exemptions from property taxation in article XIII as limited to ad valorem property taxes.  (Compare *Heckendorn*, *supra*, 42 Cal.3d at p. 488 [finding the Legislative

28

construction of special tax in Government Code section 53978 of " 'very persuasive significance' " when concluding that a parcel tax adopted pursuant to that statute was a permissible special property tax]; see also *Greene*, *supra*, 49 Cal.4th at p. 291 [finding Government Code section 53753, enacted specifically to address the balloting scheme for assessments adopted under article XIII D, section 4, was persuasive on the question whether such ballots must be voted on in secret in accordance with article II, section 7].) In short, if public agencies were already exempt from special taxes under article XIII, section 3(f), there would have been no need to include the specific exemption in Government Code section 53978. (See *People v. Leiva* (2013) 56 Cal.4th 498, 506 [ "[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage."].)

### ii. Agency Construction

The State Board of Equalization (SBE) reached the same conclusion forty years ago, opining that the City of Palmdale was not required to exempt a church from paying a special tax levied pursuant to Government Code section 53978 to finance fire protection services. (State Bd. of Equalization, legal opn. of counsel, Hope Lutheran Church—Exemption from Special Tax Oct. 17, 1980 (SBE Opinion).)[10] The SBE Opinion cited long-standing

---

[10] A legal ruling of counsel in this context is "a legal opinion written and signed by the Chief Counsel or an attorney who is the Chief Counsel's designee, addressing a specific tax application inquiry from a taxpayer or taxpayer representative, a local government agency, or board staff." (Cal. Code Regs., tit. 18, § 5700, subd. (a)(2).) Annotations, in contrast, "are summaries of the conclusions reached in selected legal rulings of counsel. Annotations do not embellish or interpret the legal rulings of counsel which they summarize and do not have the force and effect of law." (*Id.*, subd.

29

precedent in concluding that, while the state could grant a church exemption without running afoul of the Establishment Clause (*Walz v. Tax Commission* (1970) 397 U.S. 664 (*Walz*)), "[t]here is no requirement that state or local government exempt churches from paying taxes under the Free Exercise Clause of the United States Constitution or the California Constitution." (SBE Opinion at p. 1.)  Rather, "[c]hurches may be required to bear their fair share of a tax so long as the tax or fee is not exacted for the privilege of exercising their religion."  (*Id.* at p. 2, citing *Watchtower Bible and Tract Society Inc., v. County of Los Angeles, et al.,* (1947) 30 Cal.2d 426 (*Watchtower*).)  Noting that statutes granting tax exemptions must be strictly construed and that the authorizing statute exempted only governmental agencies from the special tax, the SBE opinion concluded that such a special tax could be levied against church property.  (*Ibid.*)

Implicit in the SBE opinion is the conclusion discussed above that the article XIII exemptions do not extend to special property taxes.  Thus, any exemptions from such special taxes are limited to those expressly authorized elsewhere.  The related Tax Annotation makes this inference explicit, stating: "The church exemption applies to ad valorem property taxes and does not prevent collection by a local governmental agency of a special tax imposed for fire protection or prevention services."  (Property Tax Annotations, Annotation 230.0040, Special Taxes (Oct. 17, 1980).)  The trial court here dismissed the SBE opinion, finding it distinguishable because the tax at issue in that case was authorized by a statute providing only a single exemption for public agencies.  But that is precisely the point.  If section 3(f) of article XIII exempts churches from non-ad valorem property taxes, the church in the SBE

_____

(a)(1); see also *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 4-7 (*Yamaha*).)

opinion would have been exempt from the Government Code section 53978 special tax regardless of the specific exemptions otherwise contained in the statute. It was not.

Of course, "[c]ourts must . . . independently judge the text of the statute [or constitutional provision]." (*Yamaha, supra,* 19 Cal.4th at p. 7.) However, the SBE has special expertise in the area of property taxation, and thus its interpretation of the meaning and legal effect of related statutes and constitutional provisions " 'is entitled to consideration and respect by the courts.' " (See *California State Teachers' Retirement System v. County of Los Angeles* (2013) 216 Cal.App.4th 41, 52, fn.3, quoting *Yamaha.*) This is especially true in the present case because the SBE adopted its special tax guidance in 1980, shortly after Proposition 13 added section 4 of article XIII A to the California Constitution, and the Legislature adopted Government Code section 53978. (See *Yamaha,* at p. 13 [increased deference warranted where "the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted"].) Even more persuasive is the fact that the SBE has consistently maintained its position with respect to the constitutional provisions here at issue for four decades. (*Ibid.* [greater weight to be given where "the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' "].) Under the circumstances, we conclude that the SBE's special tax interpretation is entitled to deference.

"Yet another factor we may consider is the fact that courts should apply a presumption that the Legislature is aware of a consistent and very long-standing administrative interpretation, and thus, the reenactment of the statute being interpreted with no modification designed to make it clear that the agency's interpretation is wrong is a strong indication that the administrative practice was, and is, consistent with underlying legislative

31

intent." (*Yamaha Corp. of America v. State Bd. of Equalization* (1999) 73 Cal.App.4th 338, 353; accord *In re Dannenberg* (2005) 34 Cal.4th 1061, 1082.) The SBE issued its special tax exemption opinion and related annotation in 1980.

As discussed above, the Legislature amended section 3 of article XIII eight years later in 1988 to revise the veterans' tax exemption from "property taxation," and this legislatively referred constitutional amendment was subsequently approved by the voters as Proposition 93. (See art. XIII, § 3; (Ballot Pamp., Gen. Elec. (Nov. 8, 1988), analysis of Prop. 93 and arguments thereto, pp. 60-61). Similarly, Proposition 160 amended section 4(a) of article XIII in 1992, permitting the Legislature to expand the state's disabled veterans' exemption from "property taxation" to include the homes of unmarried surviving spouses of persons who died while on active military duty as a result of a service-related injury or disease. (Ballot Pamp., Gen. Elec. (Nov. 3, 1992), analysis of Prop. 160 and arguments thereto, pp. 28-31; art. XIII, § 4(a).) Yet the Legislature did nothing in these amendments to overturn the SBE's conclusion that the term "property taxation" does not include special taxes such as the one at issue here.

Indeed, Proposition 218—adopted by the electorate 16 years after the SBE issued its special tax opinion—also did nothing to displace this longstanding administrative interpretation. This inaction lends strong support to our conclusion that the Legislature's intent in adopting and maintaining the article XIII tax exemptions was to limit them to ad valorem property taxation. And nothing in Propositions 13 and 218 has altered this view. Absent any clarification by the Legislature or the voters in "unmistakably clear" terms of their intent to expand the religious exemption to encompass duly enacted special taxes, we conclude that the religious

32

exemptions from property taxation set forth in article XIII, sections 3 and 4, apply only to ad valorem property taxation and therefore do not exempt Valley Baptist from payment of the Paramedic Tax. (*Estate of Simpson*, *supra*, 43 Cal.2d at pp. 602-603.)[11]

## E.    Free Exercise Challenge

Valley Baptist argues on appeal that even if the Paramedic Tax is an excise tax and not a tax incident to property ownership, the tax is unconstitutionally applied against the church because it infringes on Valley Baptist's free exercise of religion. We need not resolve this relatively undeveloped claim because Valley Baptist chose to forego any free exercise challenge to the Paramedic Tax in the trial court proceedings.

In argument below, Valley Baptist made several concessions worth highlighting. Valley Baptist agreed that if the trial court characterized the Paramedic Tax as an excise tax rather than a property tax, Valley Baptist would not be exempt from it. Valley Baptist acknowledged that the article XIII exemptions from "property taxation" do not apply to assessments or fees. It also agreed that the determinative issue was the interpretation of the term "property taxation" and if the City's interpretation were adopted, "the church would be responsible" for the Paramedic Tax.

Most notably, Valley Baptist agreed in argument before the trial court that it was not raising a free exercise challenge. When counsel for Valley

_____

[11] Given the rule of strict construction we must apply, Valley Baptist's reliance on first amendment precedent to argue for an expansive reading of "property taxation" in line with "changed conditions" is misplaced. Because we conclude that the religious exemption from property taxation applies solely to ad valorem property taxation, we need not consider or resolve the parties' disagreement over the proper characterization of the Paramedic Tax as a property tax or an excise tax.

Baptist mentioned the federal constitutional issue in a discussion about its right to use its buildings for religious worship, the trial court cut counsel off, stating: "But that's a different analysis altogether, right? I mean, that's a different challenge, if you say an otherwise lawful tax has the effect of—is a governmental attempt to limit or constrict the free exercise of religion. That's a completely different argument, which doesn't seem, to me, placed here. [¶] The dispute between the parties that's been proffered to me that I have to resolve in order to provide declaratory relief, again, is very straightforward: Whether the California Constitution, whether the exemption—and I didn't—I haven't heard any dispute that the Valley Baptist Church is entitled to a constitutional exemption as a religious organization. [¶] The only dispute is whether the exemption applies to this specific special tax promulgated by the voters of San Rafael." Counsel for Valley Baptist replied: "That is correct, Your Honor. That is correct."

In argument on the City's new trial motion, counsel for Valley Baptist reiterated this position. The trial court stated: "But at the end of the day, I don't need to be informed by the larger federal constitutional principles that animate the treatment of religious organizations because I'm dealing with a very specific state constitutional provision. *And no one has challenged that by saying that somehow it's inconsistent with or contravenes the federal Constitution.*" Counsel for Valley Baptist responded: "Right, you are correct on that." Given these concessions by counsel, Valley Baptist has forfeited any free exercise challenge on appeal. (See *People v. Rudd* (1998) 63 Cal.App.4th 620, 628 ["constitutional objections must be interposed before the trial judge in order to preserve such contentions for appeal," citing cases].)

While we may overlook the forfeiture of a claim and reach the merits on appeal (see *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1061), we decline

34

to do so here.  Valley Baptist raises an as applied challenge to the constitutionality of the Paramedic Tax.  Yet there has been no development in the record of its assertion on appeal that the Paramedic Tax has handicapped the church's free exercise of religion.  Valley Baptist's belated free exercise claim raises many questions that defy resolution on this limited factual record.  In what way has the Paramedic Tax impeded its ability to conduct worship services?  Does Valley Baptist claim that it is exempt only from funding paramedic services, or from other city services as well such as water, sewage, electricity, or garbage collection?  How has the City exhibited "hostility" toward Valley Baptist?  Because this claim was not properly presented or developed below, we have no occasion to weigh these matters for the first time on appeal.

## III.  DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.  The City is entitled to its costs on appeal.

_____
Sanchez, J.

WE CONCUR:


_____
Humes, P. J.


_____
Banke, J.


*A156171 Valley Baptist Church v. City of San Rafael*

Marin County Superior Court

Trial Judge: The Honorable Stephen P. Freccero

Counsel:

Colantuono, Highsmith &Whatley, Michael G. Colantuono, Jon R. di Cristina, Conor W. Harkins; City of San Rafael, Robert F. Epstein and Lisa A. Goldfien for Defendant and Appellant.

Pacific Justice Institute, Ray D. Hacke, Kevin T. Snider for Plaintiff and Respondent.